THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. FLOYD D. BARLOW, Defendant-Appellee.

Fifth District   No. 5—86—0592

Opinion filed December 3, 1987.

KARNS, P.J., dissenting.

Richard A. Runde, State's Attorney, of Effingham (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

K. Rick Keller, of Braden Law Office, of Neoga, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The State appeals from an order of the circuit court of Effingham County rescinding the summary suspension of the driver's license of defendant, Floyd Barlow, after an implied consent hearing. The State contends the court erred in finding police did not have reasonable grounds to believe defendant was in actual physical control of his vehicle while under the influence of alcohol. We reverse and remand with directions.

Defendant was issued a traffic ticket on July 13, 1986, for driving while under the influence of alcohol. On August 4, 1986, he requested an implied consent hearing, which was held on August 20, 1986. Also on that date, defendant was charged by information with driving under the influence of alcohol.

The evidence at the implied consent hearing showed that at approximately 12:20 a.m. on July 13, 1986, Illinois State trooper Mary Rhodes received a report from police headquarters that a subject was slumped over the steering wheel of a vehicle in the Village of Dieterich. Trooper Rhodes subsequently located a pickup truck alongside the road. She testified the vehicle was legally parked. She went to the truck and opened the driver's door. Defendant was sitting in the driver's seat "slumped back" with his eyes closed and an open can of beer on his lap. The keys were in the ignition but the engine was not running. Trooper Rhodes shook defendant to get his attention, then told him she needed to see his driver's license. Defendant complied, although he fumbled as he reached for it and "it took him a

while." The trooper could smell a strong odor of alcohol on his breath, and testified defendant "was sitting there in a stupor." Trooper Rhodes took defendant's license and the beer can back to her squad car to run a radio check of defendant's license. While she was in the squad car, defendant started the engine of his truck. Trooper Rhodes went to the truck and told defendant to turn off the engine and to come to her squad car. Defendant staggered as he walked to the squad car. His speech was slurred. Trooper Rhodes told defendant he was being arrested for driving while under the influence and she informed defendant of his rights regarding a breath test. Defendant stated he would take the test. Trooper Rhodes then took defendant to the Effingham County jail, where the breath test is performed. On the way there, defendant took some chewing tobacco from his pocket. Trooper Rhodes told defendant if he placed the chewing tobacco in his mouth it would constitute a refusal to take the breath test. Defendant said, "I don't care, I want to chew." He then placed the chewing tobacco in his mouth. Trooper Rhodes testified she then "wrote him a refusal." At the jail, defendant stated he wanted to take the breath test, but Trooper Rhodes told him his actions had indicated a refusal.

Defendant testified that he was asleep in his truck in a parking place along Main Street about three blocks from his home when Trooper Rhodes shined a light in his truck. This startled him. She asked him for his keys and he gave them to her. She then asked for his driver's license and he complied. Trooper Rhodes then told defendant to get out of the truck and come back to her squad car. Referring to testimony of Trooper Rhodes that defendant staggered when he walked, defendant testified, "I have a little arthritis I guess you would say, and when I sit for a period of time, my legs take a while—I have to walk a ways before I can get limbered up." In the squad car, Trooper Rhodes advised defendant he was being arrested for driving while intoxicated and asked if he wanted to take the breath test. He told her he wanted to take the test. Defendant testified he was chewing tobacco when Trooper Rhodes first approached the truck, and that sometimes he sleeps with tobacco in his mouth. On the way to the jail, defendant was in the process of taking another chew when Trooper Rhodes said, "Don't put that in your mouth." According to defendant, he already had the tobacco in his mouth by the time Trooper Rhodes finished her warning. After the tobacco was in his mouth, Trooper Rhodes told him he had just refused to take the test. Defendant responded by saying, "Why, I didn't refuse to take no test." Trooper Rhodes told him he had refused by his actions. Defendant further testified that he does not recall starting the engine of the truck after

Trooper Rhodes arrived. He admitted he had been drinking at a tavern prior to falling asleep in the truck and stated he had been asleep approximately one hour before Trooper Rhodes arrived.

The only other witness at the hearing was John Ashbaugh, a corrections officer with the Effingham County sheriff's department who was at the jail when Trooper Rhodes brought defendant there. Ashbaugh testified that defendant asked Trooper Rhodes more than once to give him a breath test, and that the trooper told defendant he had refused by placing the tobacco in his mouth. Defendant also asked Ashbaugh more than once if he could take the test. Ashbaugh further testified defendant was walking "kind of slow," his breath smelled of alcohol, and his speech was "slow and low."

The trial court first concluded that defendant was placed under arrest for driving while under the influence of alcohol. The court then stated in its order:

> "The arresting officer did not have reasonable grounds to believe the Defendant was driving or was in actual physical control of a motor vehicle while under the influence of alcohol or other drug.
>
> The most the evidence shows is that the officer had a dispatch of a subject being slumped over the steering wheel, the vehicle being parked legally in a public area, and no other violations whatsoever being observed, as the basis for confronting the Defendant."

The court rescinded the suspension of defendant's driver's license.

Section 2—118.1(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b)) states the issues which are to be determined at an implied consent hearing:

> "The scope of the hearing shall be limited to the issues of:
>
> 1. Whether the person was placed under arrest for an offense as defined in Section 11—501, or a similar provision of a local ordinance, as evidenced by the issuance of a Uniform Traffic Ticket; and
>
> 2. Whether the arresting officer had reasonable grounds to believe that such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol, other drug, or combination thereof; and
>
> 3. Whether such person, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit to or complete such test or tests to determine the person's alcohol or drug concentra-

tion; or

4. Whether the person, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person submits to a chemical test, or tests, and such test discloses an alcohol concentration of 0.10 or more, and such person did submit to and complete such test or tests which determined an alcohol concentration of 0.10 or more." Ill. Rev. Stat. 1985, ch. 95½, par. 2–118.1(b).

There is no dispute here that defendant was arrested for driving while under the influence of alcohol. The trial court's finding at issue here is whether Trooper Rhodes had reasonable grounds to believe defendant was driving or was in actual physical control of his truck while under the influence of alcohol. A preliminary issue in this case is whether Trooper Rhodes had a right to be in a position where she could detect evidence that defendant was intoxicated. The trial court found that there was no basis for confronting defendant because no violations were observed by the officer. The State concedes that the officer did not have any reasonable grounds to believe defendant was intoxicated until the officer opened the door of the vehicle. The State argues, however, that Trooper Rhodes was justified in opening the door because she had reason to believe defendant might have been sick or injured. Defendant contends that it was just as likely for Trooper Rhodes to believe defendant was merely asleep.

In *Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 495 N.E.2d 595, involving a charge of driving while under the influence of alcohol, a police officer observed a vehicle in a private driveway with its motor running and its lights on. The officer shined a light into the vehicle and observed the occupants slumped forward. The defendant was in the driver's seat. The officer knocked on the window but the defendant did not respond. The officer testified he then had the defendant get out of the car and submit to field sobriety tests. The appellate court concluded that based on these facts, "there is no question that the officer had probable cause to make his investigation and, once started, to proceed to the field tests for sobriety." (145 Ill. App. 3d at 22, 495 N.E.2d at 598.) While the court did not offer any reasons for its conclusion, Professor LaFave has stated: "If the police find a person unconscious or disoriented and incoherent in a vehicle, it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress and of finding information bearing upon the cause of his condition." 3 W. LaFave, Search & Seizure §7.4(f), at 123-24 (2d ed. 1987). See also, *e.g.*, *Anchorage v. Cook* (Alaska 1979), 598 P.2d 939 (officer found one-car accident with driver asleep or un-

conscious; court found it was entirely reasonable for officer to open door of car because driver could have been in need of medical assistance).

██ We conclude that it was reasonable for Trooper Rhodes to determine whether defendant was in need of medical attention. Trooper Rhodes had received a report that a person was "slumped" over the steering wheel of a truck. When she arrived at the truck, she observed defendant "slumped back" against the rear window of the cab of the truck with his eyes closed. It was approximately 12:20 a.m. We believe under these circumstances the officer's actions were justified and were reasonably related in scope to her purpose of determining defendant's condition. Defendant argues further, however, that Trooper Rhodes should have knocked on his window to arouse him prior to considering opening the door, as the officer did in *Ford*. The court in *Ford* did not state that knocking was a prerequisite to opening the door of the vehicle. We do not believe Trooper Rhodes was required to knock before opening the door in her attempt to determine whether defendant needed medical attention. (See *Anchorage v. Cook* (Alaska 1979), 598 P.2d 939 (officer could open door without knocking because of interest of aiding persons who may need medical attention).) We thus conclude the trooper was legally in a position from which she could detect the evidence of intoxication.

██ ■ The trial court's order, while finding explicitly that the trooper had no legitimate reason for confronting defendant, also includes the general finding that the arresting officer did not have reasonable grounds to believe defendant was driving or was in actual physical control of a motor vehicle while under the influence of alcohol. This finding may have been based upon the conclusion there was no legitimate reason for the trooper to confront defendant, which is a conclusion which we have found to be erroneous. However, if the trial court's finding is interpreted as meaning that there was no reason for the officer to believe defendant was intoxicated or in control of the vehicle, we also cannot accept it. In *People v. Guynn* (1975), 33 Ill. App. 3d 736, 738, 338 N.E.2d 239, 240-41, the court held that under the statute prohibiting driving while under the influence of alcohol (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501)—which like the implied consent law refers to one who drives or is in "actual physical control" of a vehicle—a person can be in actual physical control even though he is not actually operating a moving vehicle. In *People v. Chamberlain* (1972), 5 Ill. App. 3d 235, 282 N.E.2d 784, the court found the evidence sufficient to warrant a jury's conclusion "that the defendant was and had been in actual physical control of the motor vehicle,

while under the influence of intoxicating liquor," where the evidence showed that the defendant was found slumped over the steering wheel in a car parked in an alley with its lights on and the engine running. (5 Ill. App. 3d at 240, 282 N.E.2d at 788.) In *People v. Heimann* (1986), 142 Ill. App. 3d 197, 491 N.E.2d 872, the court held that for purposes of the offense of driving under the influence of alcohol, "[a]ctual physical control of a vehicle requires only that one is behind the steering wheel in the driver's seat with the ignition key and physically capable of starting the engine and moving the vehicle." (142 Ill. App. 3d at 199, 491 N.E.2d at 874.) In *Heimann*, the court affirmed the conviction based upon evidence the defendant had attempted to start the vehicle. (See also *People v. Mattison* (1986), 149 Ill. App. 3d 816, 819, 500 N.E.2d 1103, 1106.) In the present case, the uncontradicted evidence showed defendant was in the driver's seat and the keys were in the ignition. We believe this evidence alone would meet the test set out in *Heimann* even though defendant was asleep most of the time he was in the truck. In *Guynn* the court stated: "We do not see anything which would imply a legislative intent or public policy to permit an intoxicated person to 'sleep it off' behind the wheel of a parked car, although that might be preferable to having him drive a car while intoxicated. A person behind the wheel of a parked car can readily move into a position where he can endanger other persons, property or vehicles." (*Guynn*, 33 Ill. App. 3d at 739, 338 N.E.2d at 241.) The logic of this observation in *Guynn* is demonstrated by the evidence here that defendant, after being awakened, started the engine of the truck. When he did so, he was clearly in actual physical control of his vehicle. (See *People v. Heimann*, 142 Ill. App. 3d 197, 199, 491 N.E.2d 872, 874; *People v. Mattison*, 149 Ill. App. 3d 816, 819, 500 N.E.2d 1103, 1106.) Therefore, it would be against the manifest weight of the evidence to conclude defendant was not in actual physical control of his vehicle. A conclusion that the officer did not have reasonable grounds to believe defendant was under the influence of alcohol while in control of the vehicle would also be against the manifest weight of the evidence. Trooper Rhodes observed an open beer can on defendant's lap, detected a strong odor of alcohol on defendant's breath, defendant's speech was slurred and he staggered when he walked. Trooper Rhodes described him as being in a stupor. She had to shake him to get his attention. He fumbled when he reached for his license. Defendant's testimony did not significantly contradict the trooper's testimony. He admitted he had been drinking that evening. Instead of denying that his speech might have sounded slurred or that he stag-

gered, he attempted to explain these characteristics at the hearing by stating he has arthritis and by demonstrating he always speaks slowly and in a low voice. The trooper had no means of knowing defendant possessed these characteristics. We believe the evidence can only support the conclusion that Trooper Rhodes had reasonable grounds to believe defendant was in actual physical control of the vehicle while under the influence of alcohol. See *People v. Greenspon* (1984), 129 Ill. App. 3d 849, 852, 473 N.E.2d 331, 333.

We therefore reverse the trial court's order rescinding the summary suspension of defendant's driver's license. Because of its finding on the issue of reasonable grounds, the trial court did not include in its order a determination of whether defendant refused to submit to or complete the breath test, an issue to be decided at the implied consent hearing pursuant to section 2—118.1(b) of the Code. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) Therefore, we remand the cause to the trial court to make this determination.

For the foregoing reasons, the order of the circuit court of Effingham County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

WELCH, J., concurs.

PRESIDING JUSTICE KARNS, P.J., dissenting:

I agree that the cause should be remanded for a determination of whether defendant refused to submit to a breathalyzer test, although it may be argued that implicit in the trial court's order was a determination of all questions of fact and credibility adverse to the prosecution. I do not agree, however, that the officer had reasonable grounds to intrude into defendant's truck under the circumstances present here.

One fact developed at oral argument, not mentioned by the majority, is that defendant had been drinking at a tavern across the street from where his truck was parked, in the small village of Dieterich. Defendant left the tavern, crossed the street, got in the truck and went to sleep. The trial court undoubtedly determined that defendant had not driven his car, and contrary to the statement in *People v. Guynn* (1975), 33 Ill. App. 3d 736, 739, 338 N.E.2d 239, 241, I see nothing wrong with defendant getting into his truck to "sleep it off," if in fact he was under the influence, a factual question also resolved in favor of defendant.

Most importantly, I see no reason to reverse the trial court's determination that the intrusion into defendant's truck was under the circumstances present here an impermissible search. The opening of a car door is the beginning of a search. The truck was legally parked. No traffic violation was committed. There was simply no probable cause for the intrusion into the cab of the truck. The trial court's determination of all factual questions should not be disturbed unless manifestly erroneous. *People v. Collins* (1987), 154 Ill. App. 3d 149, 506 N.E.2d 963.