THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TIMOTHY CUMMINGS, Defendant-Appellant.

Third District   Nos. 3—87—0537 through 3—87—0539 cons.

Opinion filed November 7, 1988.

Thomas A. Bambrick, of Bambrick & Bambrick, P.C., of Lemont, for appellant.

Edward J. Masters, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

The trial court convicted the defendant, Timothy Cummings, of driving under the influence of alcohol, driving with a breath-alcohol content greater than 0.10, and driving while his license was revoked. (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501(a)(2), 11—501(a)(1), 6—303(a).) The court sentenced the defendant to 75 days in a work-release program. The defendant appeals.

The record shows that on May 16, 1986, University Park police officer B. Cronin found the defendant's car in a ditch. Officer Cronin testified that the defendant was slumped over the steering wheel, passed out. After turning off the car's engine, Cronin woke the defendant. Officer Cronin noted that the defendant had trouble standing, walking and responding to questions. From her experience as a police officer, she believed he was intoxicated. An intoxilyzer subsequently revealed that the defendant had a breath-alcohol content of 0.13.

On cross-examination, Officer Cronin acknowledged that in her report of the incident she had not stated that the car's engine was running, only that the keys were in the vehicle. Cronin further noted that when she found it, the car was not driveable and had to be towed away.

The defendant testified that when Officer Cronin found him in his car, he was lying on the front seat, asleep and with his car keys in his pocket. He denied drinking any alcohol prior to driving into the ditch. Only after he realized that he was stuck did he drink two cans of beer

he had in the backseat. He later learned that his car had a broken tie rod.

On appeal, the defendant first argues that he was not proved guilty beyond a reasonable doubt of driving while under the influence of alcohol.

Section 11—501 of the Illinois Vehicle Code (the Code) provides in relevant part:

"(a) A person shall not drive or be in actual physical control of any vehicle within this State while:

1. The alcohol concentration in such person's blood or breath is 0.10 or more ***; [or]

2. Under the influence of alcohol." Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501(a)(1), (a)(2).

In support of his argument, the defendant contends that there was no evidence that he was intoxicated before his car went into the ditch. He cites several cases in which the defendants were in car accidents and were later arrested when they returned to their cars drunk. In each case, the court found that the State had failed to prove that the defendant was intoxicated at the time he drove his car. (See *People v. Flores* (1976), 41 Ill. App. 3d 96, 353 N.E.2d 131.) In those cases, however, the defendants clearly were not in actual physical control of their cars when they were arrested. Accordingly, since we find that this case is controlled by the "actual physical control" clause of section 11—501, we find the defendant's argument unpersuasive.

■ Numerous Illinois cases have discussed what constitutes "actual physical control" of a vehicle. It is well established that the defendant need not actually be operating a moving vehicle. (*People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.) Beyond that, actual physical control is a question of fact which must be decided on a case-by-case basis. (*People v. Heimann* (1986), 142 Ill. App. 3d 197, 491 N.E.2d 872.) However, certain evidence has repeatedly been held to indicate actual physical control. Generally, proof that the defendant was in the driver's seat, possessed the ignition key, and had the physical capability of starting the engine and driving or moving the vehicle establishes actual physical control. *Heimann*, 142 Ill. App. 3d at 199.

Further, Illinois courts have repeatedly held that a defendant may be in actual physical control of his vehicle even though he is asleep in it. (*People v. Clark* (1977), 47 Ill. App. 3d 568, 362 N.E.2d 407.) Many of the cases with that holding rely on *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239. There, this court held that it did "not see anything which would imply a legislative intent or public policy to permit an intoxicated person to 'sleep it off' behind the wheel of a

parked car." 33 Ill. App. 3d at 739, 338 N.E.2d at 241.

*Guynn* has had its detractors. In *People v. Barlow* (1987), 163 Ill. App. 3d 281, 516 N.E.2d 982, the defendant left a tavern in which he had been drinking, crossed the street to his legally parked truck, got in and went to sleep. He was subsequently arrested and his driver's license was summarily suspended after he indirectly refused to take a breath-alcohol test. The trial court rescinded the summary suspension of the defendant's driver's license, finding that the police had not had reasonable grounds to believe the defendant was in actual physical control of his vehicle. Relying in part on *Guynn*'s finding of no "sleep-it-off" policy in Illinois, a majority of the appellate court held that the defendant was in actual physical control of his truck. However, a dissenting judge rejected *Guynn*, finding that there was nothing wrong with an intoxicated person getting into his truck to "sleep it off."

The basic proposition of *Guynn*, that a sleeping person behind the wheel of a parked car can readily move into a driving position where he can endanger others, remains sound. Further, in an Illinois driving under the influence prosecution, the State is not required to prove the defendant's intent to put the vehicle into motion (compare *State v. Daly* (1973), 64 N.J. 122, 313 A.2d 194), so a sleeping defendant's intent is irrelevant in determining whether the State met its burden of proof.

We are concerned, however, that through time and expansion by subsequent court rulings, *Guynn* may have become counterproductive to society's goal of providing safe highways. In recent years, the public and the legislature have become increasingly concerned with the injuries and deaths caused by intoxicated drivers. In an effort to keep intoxicated people from driving, the legislature has harshened the penalties for driving under the influence. The legislature's actions have been accompanied by widespread publicity and a general media effort to educate the public against driving while intoxicated.

We can expect that most people realize, as they leave a tavern or party intoxicated, that they face serious sanctions if they drive. While the preferred response would be for such people either to find alternate means of getting home or to remain at the tavern or party without getting behind the wheel until sober, this is not always done. And while we can say that such people should have stayed sober or planned better, that does not realistically resolve this all-too-frequent predicament.

For the intoxicated person caught between using his vehicle for shelter until he is sober or using it to drive home, *Guynn* encourages

him to attempt to quickly drive home, rather than to sleep it off in the car, where he will be a beacon to police.

We believe it would be preferable, and in line with legislative intent and social policy, to read more flexibility into *Guynn*. In those rare instances where the facts show that a defendant was furthering the goal of safer highways by voluntarily "sleeping it off" in his vehicle, and that he had no intent of moving the vehicle, trial courts should be allowed to find that the defendant was not "in actual physical control" of the vehicle for purposes of section 11—501.

The present case is not one of those rare instances, but instead involves the frequently found circumstance of an intoxicated defendant sleeping in his car after driving it into a ditch. While the defendant provided a good-citizen tale of how he came to be drunk in a ditch, the trial court was not obligated to believe him.

■ On appeal, we are obligated to view the evidence in the light most favorable to the prosecution. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In that light, the evidence shows that at the time of his arrest, the defendant was seated in the driver's seat of his car, that the car's engine was running, and that the defendant was physically capable of moving the car. We find that the State proved beyond a reasonable doubt that the defendant was "in actual physical control" of his car.

The defendant further argues, however, that his car was not a "vehicle" for purposes of section 11—501. He notes that the car had a broken tie rod, was not driveable and had to be towed away. In support of his argument, he cites *People v. Johnson* (1976), 43 Ill. App. 3d 428, 356 N.E.2d 1373, in which the court held that the defendant's car was not a "vehicle" under section 11—501 because a damaged battery cable and burned-out starter rendered the car inoperable.

■ Since *Johnson* was decided, the statute defining "vehicle" has been amended. A car is now considered to be a vehicle "until such time it either comes within the definition of a junk vehicle *** or a junking certificate is issued for it." (Ill. Rev. Stat. 1987, ch. 95½, par. 1—217.) "A junk vehicle is a vehicle which has been or is being disassembled, crushed, compressed, flattened, destroyed or otherwise reduced to a state in which it no longer can be returned to an operable state." Ill. Rev. Stat. 1987, ch. 95½, par. 1—134.1.

There is no evidence in the instant case that the defendant's car fit the description of a "junk vehicle" or that a junking certificate had been issued for it. (*People v. Borst* (1987), 162 Ill. App. 3d 830, 516 N.E.2d 854.) Accordingly, for purposes of section 11—501 of the Code, it was a vehicle.

■ Additionally, we find unpersuasive the defendant's contention that the charging instrument was confusing because it did not indicate whether he was being charged with driving a vehicle while intoxicated or with being in actual physical control of a vehicle while intoxicated. Traffic offenses need not be charged with the specificity of indictments; naming the offense and citing the statute are generally sufficient. (*People v. Clark* (1977), 47 Ill. App. 3d 568, 362 N.E.2d 407.) The complaint here was sufficient to charge the offense for which the defendant was convicted. For the above reasons, we conclude that the defendant was properly convicted of driving while under the influence of alcohol.

■ The defendant's second argument on appeal is that as a matter of law he was not proved guilty of driving with a revoked license, since at the time of his arrest he was driving with a valid Indiana license and was an Indiana resident.

Regarding the driving with a revoked license conviction, the defendant stipulated that he was driving a motor vehicle at the time charged. Further, it is undisputed that the defendant's Illinois driver's license was revoked on February 11, 1984, and that the revocation was still in effect when he was charged with the current offense. However, the defendant testified that at the time of his arrest, he was an Indiana resident. The record shows that when he was arrested he had an unexpired Indiana driver's license, issued July 3, 1984. The defendant admitted that when he applied for the Indiana license, he did not inform the Indiana authorities that his Illinois license had been revoked.

Section 6—303(a) of the Illinois Vehicle Code provides in pertinent part:

> "Any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or any other law *** shall be guilty of a Class A misdemeanor." Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(a).

Once a defendant's Illinois driver's license has been revoked, he shall not drive in Illinois until he obtains a license as permitted under the Illinois Vehicle Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—210; *People v. Klaub* (1985), 130 Ill. App. 3d 704, 474 N.E.2d 851.) The Code incorporates the "Driver License Compact" (the Compact) (Ill. Rev. Stat. 1987, ch. 95½, par. 6—700 *et seq.*), to which Illinois and Indiana are party States. (*Klaub*, 130 Ill. App. 3d at 706.) Under the

Compact, a party State may not grant the driver's license application of a person who has a party State's license currently revoked, unless one year has passed since the day the license was revoked and the application is permitted by law. Ill. Rev. Stat. 1987, ch. 95½, par. 6—704(2).

In the instant case, the defendant applied for and received his Indiana license only five months after the day his Illinois license was revoked. Accordingly, since one year had not passed at the time of issuance, the defendant's Indiana driver's license was not valid under the Compact. The trial court therefore properly convicted the defendant of driving while his license was revoked.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER, P.J., and BARRY, J., concur.