THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN A. SCAPES, Defendant-Appellant.

Fourth District   No. 4—93—0088

Argued July 20, 1993.—Opinion filed August 12, 1993.

William A. Yoder (argued), of Ostling, Ensign, Barry & Glenn, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant John Anthony Scapes appeals the trial court's order denying his petition to rescind the statutory summary suspension of his driver's license. Defendant alleges he was not in actual physical control of a motor vehicle while under the influence of alcohol. We affirm.

On December 11, 1992, defendant went with a few friends to a bar located in downtown Normal. Defendant drove his 1966 Mustang to this bar and parked his car in front of the Campus Town Supply Store. Defendant consumed approximately three bottles of Miller Lite beer and three shots of alcohol. When defendant left the bar at approximately 12:30 a.m., he knew he was too drunk to drive and so he began to look for someone to drive him home. Because he could not find anyone to drive him home, defendant decided to either call his

girlfriend or to simply walk home. Defendant lived approximately one-half mile from the bar. As he was cold, he decided to sit in his car with the heat on while he decided how he was going to get home. Defendant realized his girlfriend was scheduled to take the Graduate Record Examination (GRE) the next morning so, rather than wake her up, he decided to walk home.

While defendant was sitting in his car warming himself, he looked up and saw a sign directly in front of him stating "no parking 2 a.m.—6 a.m." Defendant did not want to get a ticket or have his car towed, so he decided to stay in his car instead of walking home. He turned the car off, and put the key into the "accessory" position in order to play the radio. Defendant put on his seat belt "to hold me up, plus it's the law."

He dozed off and was subsequently awakened by a police officer knocking on his car window. Defendant rolled down the window and told the officer he was not going anywhere, but that he drank too much at the bar and was merely sitting in his car. Defendant testified he had no intent to drive his car that night.

Officer Duane Lee Harris of the Town of Normal police department testified that at approximately 12:45 a.m. on December 12, he saw a white older model Ford Mustang parked along North Street near a bar called Rocky's. The engine was idling as evident by the smoke coming from the exhaust pipe. Officer Harris observed one person in the driver's seat. Approximately one-half hour later, Officer Harris passed by that vehicle again. The car was not running this time. Officer Harris exited his squad car, went up to the vehicle, looked into the car, saw the driver slumped over the wheel asleep and heard the radio playing. Officer Harris testified the key was in the "on" position.

Officer Harris woke up the driver, whom he later identified in court as defendant. He noticed defendant's eyes were bloodshot and glassy and he had a strong odor of alcoholic beverage on his breath. Officer Harris had defendant perform field sobriety tests. He was of the opinion that defendant was under the influence of alcohol and subsequently placed him under arrest for driving under the influence of alcohol (DUI). The record on appeal indicates defendant took the breathalyzer test that evening, which produced a reading of .11. Defendant was served immediate notice of the suspension of his driving privileges.

On December 21, 1992, defendant filed a petition to rescind the statutory summary suspension. He alleged, among other things, the arresting officer had no reasonable grounds to believe he was in ac-

tual physical control of a motor vehicle while under the influence of alcohol. A hearing was held on January 14, 1993, and the court took the case under advisement. On January 22, 1993, the court issued an order denying the petition to rescind the statutory summary suspension. The court found defendant was in actual physical control of the motor vehicle and had a blood-alcohol concentration of greater than .10.

Defendant contends the trial court erred in denying his petition to rescind the statutory summary suspension because when he was arrested, he had no intent to operate the motor vehicle or be in actual physical control of the motor vehicle.

Section 11—501(a)(1) of the Illinois Vehicle Code provides that a person shall not drive or be in actual physical control of any vehicle while having a blood-alcohol concentration of .10 or more. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501(a)(1).) Illinois courts have held that a motorist need not be actually driving a vehicle in order to be in actual physical control of it. (*People v. Brown* (1988), 175 Ill. App. 3d 676, 678, 530 N.E.2d 74, 75.) Defendant's intent to put the car in motion is irrelevant to that determination. *People v. Cummings* (1988), 176 Ill. App. 3d 293, 296, 530 N.E.2d 672, 675; *People v. Davis* (1990), 205 Ill. App. 3d 431, 435, 562 N.E.2d 1152, 1155.

Certain factors, such as whether the motorist is positioned in the driver's seat of the vehicle, in possession of the ignition key and has the physical capability of starting the engine and moving the vehicle are repeatedly singled out as indications that the motorist is in actual physical control of the vehicle. Courts have also found actual physical control where the defendant is the only one present in the vehicle and the vehicle doors are locked. (*Davis*, 205 Ill. App. 3d at 435, 562 N.E.2d at 1155; *Cummings*, 176 Ill. App. 3d at 295, 530 N.E.2d at 674; *People v. Heimann* (1986), 142 Ill. App. 3d 197, 199, 491 N.E.2d 872, 874.) A defendant may be in actual physical control of his vehicle even though he is asleep in it. (*Cummings*, 176 Ill. App. 3d at 295, 530 N.E.2d at 674.) A finding of actual physical control was not defeated where the facts showed defendant was asleep, unconscious, slumped to the passenger side of the vehicle, had his head on the driver's door with his legs extended across the front seat or the vehicle was off the road in a ditch. See *Davis*, 205 Ill. App. 3d at 435-36, 562 N.E.2d at 1155-56 (and cases cited therein).

At a hearing regarding the propriety of the statutory summary suspension, the defendant motorist has the initial burden of presenting a *prima facie* case for rescission. (*People v. Orth* (1988), 124 Ill. 2d 326, 337-38, 530 N.E.2d 210, 215.) Actual physical control is a

question of fact that must be decided on a case-by-case basis. (*Davis*, 205 Ill. App. 3d at 435, 562 N.E.2d at 1155; *Cummings*, 176 Ill. App. 3d at 295, 530 N.E.2d at 674.) A trial court's finding will not be reversed on review unless it is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217.

Accordingly, under this analysis, the trial court's finding was not against the manifest weight of the evidence. Defendant was found asleep in his car, in the driver's seat, with his seat belt on and the key in the ignition in the accessory position. Defendant admitted to starting the engine and letting it run for approximately five minutes. He would merely have to turn the key over to start the car. The only evidence tending to show no actual physical control was that defendant was asleep and had no intent to drive the vehicle. However, defendant's intent is irrelevant and being asleep is not enough to defeat a finding of actual physical control.

Defendant believes this court should adopt the public policy argument set forth in *Davis* and *Cummings* which holds that where the facts indicate a motorist is "sleeping it off," the trial court should be allowed to find a defendant was not in actual physical control of his vehicle.

In *Cummings*, the third district noted its decision in *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239, which rejected such a public policy, and stated:

> "We are concerned, however, that through time and expansion by subsequent court rulings, *Guynn* may have become counterproductive to society's goal of providing safe highways. In recent years, the public and the legislature have become increasingly concerned with the injuries and deaths caused by intoxicated drivers. In an effort to keep intoxicated people from driving, the legislature has harshened the penalties for driving under the influence. The legislature's actions have been accompanied by widespread publicity and a general media effort to educate the public against driving while intoxicated.

> We can expect that most people realize, as they leave a tavern or party intoxicated, that they face serious sanctions if they drive. While the preferred response would be for such people either to find alternate means of getting home or to remain at the tavern or party without getting behind the wheel until sober, this is not always done. And while we can say that such people should have stayed sober or planned better, that does not realistically resolve this all-too-frequent predicament.

For the intoxicated person caught between using his vehicle for shelter until he is sober or using it to drive home, *Guynn* encourages him to attempt to quickly drive home, rather than to sleep it off in the car, where he will be a beacon to police." (*Cummings*, 176 Ill. App. 3d at 296-97, 530 N.E.2d at 675.)

The court continued, stating:

"We believe it would be preferable, and in line with legislative intent and social policy, to read more flexibility into *Guynn*. In those rare instances where the facts show that a defendant was furthering the goal of safer highways by voluntarily 'sleeping it off' in his vehicle, and that he had no intent of moving the vehicle, trial courts should be allowed to find that the defendant was not 'in actual physical control' of the vehicle for purposes of section 11—501." *Cummings*, 176 Ill. App. 3d at 297, 530 N.E.2d at 675.

The court, however, found that case was not one of those rare instances but instead involved the frequently found circumstances of an intoxicated defendant sleeping in his car after driving it into a ditch. The court noted the defendant provided a "good-citizen tale" of how he came to be drunk in the ditch but the trial court was not obligated to believe him. The evidence showed that at the time of his arrest, the defendant was seated in the driver's seat of his car, with the engine running and that he was physically capable of moving the car. Thus, the court in *Cummings* concluded the State proved beyond a reasonable doubt that the defendant was in the actual physical control of his car.

In *Davis*, the court noted the public policy argument set forth above and observed that some States had enacted provisions which provide for such an exception, and in those States where the legislature had not spoken on this subject, reviewing courts had decided the issue both ways. The court then went on to note the third district's decisions in *Guynn* and *Cummings* and quoted the language quoted above regarding those rare instances where the facts showed that a defendant was furthering safer highways by voluntarily sleeping it off in his vehicle and had no intent of moving it.

The *Davis* court concluded its case was not one of those rare instances. There, the court found the defendant had been driving from downtown Chicago to Schaumburg and approximately one hour later realized he was not feeling well. He pulled his vehicle off onto the shoulder of the expressway, locked the doors and turned off the engine, but left the keys in the ignition. The defendant climbed over the console between the two front bucket seats, zipped himself into a

sleeping bag and fell asleep in the backseat. He did not recall anything further until he was awakened by the trooper and taken out of his vehicle. He acknowledged he had been drinking earlier that evening. The defendant subsequently failed the field-sobriety tests and was placed under arrest. (*Davis*, 205 Ill. App. 3d at 434, 562 N.E.2d at 1154.) The court concluded that the fact that the defendant was in the backseat of the car did not defeat a finding of actual physical control. The court noted he could just have easily gotten back into the driver's seat by climbing across the console between the bucket seats as he had to get into the backseat in the first place. Moreover, the court noted the defendant had waited approximately one hour after beginning driving the vehicle before stopping to sleep it off. Thus, the court concluded this was not one of those rare instances where the trial court should be allowed to find that defendant was not in actual physical control of the car.

We do not believe defendant's case presents one of those rare instances in which a trial court could find a defendant not in actual physical control of the car. The trial court held defendant was in actual physical control of his motor vehicle and the evidence supports this decision.

Therefore, the trial court's decision was not against the manifest weight of the evidence. The judgment of the circuit court of McLean County is affirmed.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.