(No. 80315.—)

THE CITY OF NAPERVILLE, Appellee, v. RYAN M.
WATSON, Appellant.

*Opinion filed February 20, 1997.*

FREEMAN, J., joined by McMORROW, J., dissenting.

G. Joseph Weller, Deputy Defender, of the Office of
the State Appellate Defender, of Elgin, for appellant.

Michael M. Roth, Paul L. Stephanides and Francis J. Cuneo, Jr., Corporation Counsel, of Naperville, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Ryan M. Watson, was charged by the City of Naperville (City) with driving while under the influence of alcohol in violation of an ordinance (see Naperville Municipal Code § 11—1—1) adopting the provisions of the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1994)) by reference. Following a jury trial, defendant was found guilty and was sentenced to one year of court supervision and a $250 fine. The appellate court affirmed defendant's conviction (No. 2—94—0911 (unpublished order under Supreme Court Rule 23)), and this court allowed defendant's petition for leave to appeal (155 Ill. 2d R. 315). The issues raised on appeal are: (1) whether defendant was shown to be in "actual physical control" of his vehicle; and (2) whether defendant was entitled to raise, and instruct the jury on, the affirmative defense of necessity. We affirm.

## BACKGROUND

On June 3, 1993, at about 4:30 a.m., two Naperville police officers discovered defendant asleep in his car. The car was parked with its engine running in the parking lot of an apartment complex in Naperville. Defendant was lying across the front seat with his head on the passenger's side. The officers had difficulty rousing defendant, and when they did, defendant appeared disoriented. Defendant told the officers that he was sleeping in his car before driving home because he had had too much to drink. The officers testified that defendant's performance in field sobriety tests indicated to them that he was under the influence of alcohol. At that point defendant was arrested. Later, defendant

submitted to a breathalyzer test which indicated an alcohol concentration of 0.18.

Defendant testified that at about 5 p.m. on June 2, 1993, he picked up his girlfriend, Danielle, and drove her to a party at his home in Bolingbrook. At the time, Danielle was living with a friend in Naperville. Defendant had been drinking, and when Danielle was ready to leave the party, he explained to her that he could not drive her home because he had had too much to drink. Instead, Danielle drove defendant's car to her friend's apartment in Naperville and defendant accompanied her as a passenger. They arrived at about 12:30 a.m. Defendant testified that he planned to stay with Danielle at her friend's apartment and that there was "no way" that he would drive back to Bolingbrook. Instead of staying in the apartment, however, defendant remained in his car in the apartment complex's parking lot. Danielle's testimony corroborated defendant's account of these events. The trial court barred the defense from introducing evidence regarding the reason defendant did not stay in the apartment. The defense sought to offer testimony that Danielle's friend's mother would not allow defendant to stay in the apartment.

Defendant additionally testified that it was very cold in the car and at about 2:30 a.m. he went back to the apartment and asked for a coat or a blanket. Defendant was given a coat, and when he returned to his car he turned on the engine so he could run the heater. Defendant then went to sleep in the car. The parties stipulated that defendant did not actually drive his car during the evening of June 2 or the morning of June 3.

## ANALYSIS

Section 11—501(a) of the Illinois Vehicle Code provides in pertinent part that a person shall not "drive or be in actual physical control of any vehicle" while the alcohol concentration of his or her blood or breath is

0.10 or more or the person is under the influence of alcohol. 625 ILCS 5/11—501(a) (West 1994). While it is undisputed that defendant did not drive his vehicle during the relevant time frame, the City prosecuted defendant under the theory that he was in actual physical control of the vehicle. Defendant argues that the evidence conclusively shows that he had no intention of driving and only used the vehicle as stationary shelter where he could "sleep off" the effects of the alcohol he had consumed. Defendant maintains that under these circumstances he was not in "actual physical control" of the vehicle and his conviction must be reversed.

A person need not drive to be in actual physical control of a vehicle, nor is the person's intent to put the car in motion relevant to the determination of actual physical control. See *People v. Davis*, 205 Ill. App. 3d 431, 435 (1990). The issue of actual physical control is determined on a case-by-case basis giving consideration to factors such as whether the motorist is positioned in the driver's seat of the vehicle, has possession of the ignition key and has the physical capability of starting the engine and moving the vehicle. See *Davis*, 205 Ill. App. 3d at 435; *People v. Heimann*, 142 Ill. App. 3d 197, 199 (1986). In a number of cases, individuals discovered sleeping in vehicles have been found to be in actual physical control. See *Davis*, 205 Ill. App. 3d 431; *People v. Scapes*, 247 Ill. App. 3d 848 (1993); *People v. Cummings*, 176 Ill. App. 3d 293 (1988); *People v. Brown*, 175 Ill. App. 3d 676 (1988); *People v. Karjala*, 172 Ill. App. 3d 871 (1988).

Some controversy has arisen as to how to treat the individual who recognizes that alcohol consumption has impaired his ability to drive and who chooses to "sleep it off" in a parked vehicle. In *People v. Guynn*, 33 Ill. App. 3d 736, 739 (1975), the court stated, "[w]e do not see anything which would imply a legislative intent or

public policy to permit an intoxicated person to 'sleep it off' behind the wheel of a parked car, although that might be preferable to having him drive a car while intoxicated. A person behind the wheel of a parked car can readily move into a position where he can endanger other persons, property or vehicles." Other Illinois decisions have likewise refused to recognize the defense of "sleeping it off." See *People v. Brown*, 175 Ill. App. 3d 676, 679 (1988); *People v. Barlow*, 163 Ill. App. 3d 281, 287 (1987); see also *People v. Karjala*, 172 Ill. App. 3d 871 (1988).

However, *dicta* in *People v. Cummings*, 176 Ill. App. 3d 293 (1988), advocated a different rule. In *Cummings*, the defendant's car was found in a ditch with the defendant passed out behind the steering wheel. The defendant testified that he began drinking only after his car had become stuck in the ditch. In the course of its analysis, the *Cummings* court expressed its concern that "through time and expansion by subsequent court rulings, *Guynn* may have become counterproductive to society's goal of providing safe highways." *Cummings*, 176 Ill. App. 3d at 296. The court explained:

"For the intoxicated person caught between using his vehicle for shelter until he is sober or using it to drive home, *Guynn* encourages him to attempt to quickly drive home, rather than to sleep it off in the car, where he will be a beacon to police.

We believe it would be preferable, and in line with legislative intent and social policy, to read more flexibility into *Guynn*. In those rare instances where the facts show that a defendant was furthering the goal of safer highways by voluntarily 'sleeping it off' in his vehicle, and that he had no intent of moving the vehicle, trial courts should be allowed to find that the defendant was not in 'actual physical control' of the vehicle for purposes of section 11—501." *Cummings*, 176 Ill. App. 3d at 296-97.

See also *People v. Barlow*, 163 Ill. App. 3d 281, 288 (1987) (Karns, P.J., dissenting) ("contrary to the statement in

[*Guynn*], I see nothing wrong with defendant getting into his truck to 'sleep it off' ").

Nonetheless the *Cummings* court affirmed the defendant's conviction, concluding that the case was not one of the "rare instances" it had described, "but instead involve[d] the frequently found circumstance of an intoxicated defendant sleeping in his car after driving it into a ditch." *Cummings*, 176 Ill. App. 3d at 297. The court noted that the trier of fact was not obligated to credit the defendant's "good-citizen tale" of how he came to be drunk in the ditch. *Cummings*, 176 Ill. App. 3d at 297.

Relying on *Cummings*, defendant urges us to hold that intoxicated individuals who voluntarily choose to sleep off the effects of alcohol in a parked vehicle may do so without fear of prosecution. We are unpersuaded by *Cummings*' reasoning and defendant's argument. The term "actual physical control" in section 11—501 is unqualified by any language suggesting that the accused's purpose in occupying a vehicle is germane to criminal responsibility. Courts in other jurisdictions have emphasized the preventive nature of statutes proscribing actual physical control by those under the influence of alcohol. It has been stated that the purpose of such statutes is to discourage intoxicated persons from entering motor vehicles except as passengers. *In re Suspension of the Driver's License of Vogt*, 117 Idaho 545, 546, 789 P.2d 1136, 1137 (1990); *Buck v. North Dakota State Highway Commissioner*, 425 N.W.2d 370, 373 (N.D. 1988). "An intoxicated individual who gets into his vehicle to sleep poses a threat of immediate operation of his vehicle at any time while still intoxicated." *Buck*, 425 N.W.2d at 373; see also *Stevenson v. City of Falls Church*, 243 Va. 434, 440, 416 S.E.2d 435, 439 (1992) (Compton, J., dissenting, joined by Carrico and Hassell, JJ.) ("Ordinary experience tells us that one in a drunken

stupor in the driver's seat of a vehicle is likely to arouse abruptly, engage the motive power of the vehicle, and roar away imperiling the lives of innocent citizens"). In *State v. Lawrence*, 849 S.W.2d 761 (Tenn. 1993), the court stated:

> "We agree with the observation that '[a] motor vehicle is recognized in the law as a dangerous instrumentality when in the control of a sober person; in the control of a drunk, the dangerous instrumentality becomes lethal. Therefore *** the court [should interpret] the drunk driving statute in a way that [keeps] drunks from behind the steering wheels of motor vehicles, even when the drunk need[s] to "sleep it off." ' " *Lawrence*, 849 S.W.2d at 765, quoting *Stevenson v. City of Falls Church*, 243 Va. 434, 440, 416 S.E.2d 435, 439 (1992) (Compton, J., dissenting, joined by Carrico and Hassell, JJ.).

The legislature's use of the broad, unqualified phrase "actual physical control" in section 11—501 reflects a legislative public policy of encouraging those who plan to drink at a party or tavern to arrange lodging or safe transportation home before they set out. A person may embark upon an evening of drinking with the *intention* of sleeping in his or her car, but the actual decision whether to do so will be made at a time when the person's judgment is impaired by alcohol. While some courts have embraced a construction of "actual physical control" permitting the use of a vehicle for stationary shelter (see, *e.g.*, *State v. Holloran*, 669 A.2d 800, 801 (N.H. 1995); *Atkinson v. State*, 331 Md. 199, 216, 627 A.2d 1019, 1027 (1993)), for the reasons set forth above, we decline to adopt such a construction.

The evidence in the case at bar is sufficient to support the jury's determination that defendant was in actual physical control of his vehicle. It is no defense that defendant may have intended only to use the vehicle for shelter while achieving sobriety.

Defendant also argues that the trial court committed reversible error by excluding evidence relevant to

the defense of necessity and by refusing to instruct the jury on that defense theory. We need not address the argument, as it is waived. Supreme Court Rule 315(b)(3) states that a petition for leave to appeal shall contain "a statement of the points relied upon for reversal of the judgment of the Appellate Court." 155 Ill. 2d R. 315(b)(3). Rule 315(b)(5) states that the petition shall contain "a short argument *** stating *** why the decision of the Appellate Court should be reversed or modified." 155 Ill. 2d R. 315(b)(5). In the case at bar, the "points relied on for reversal" and "argument" sections of defendant's petition for leave to appeal focused exclusively on the question of whether defendant was shown to be in actual physical control of his vehicle; defendant did not raise any issue involving the defense of necessity. A party's failure to raise an argument in the petition for leave to appeal may be deemed a waiver of that argument. *Federal Deposit Insurance Corp. v. O'Malley*, 163 Ill. 2d 130, 154 (1994). We therefore decline to address defendant's argument regarding the defense of necessity.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

Defendant contends the trial court erroneously barred him from asserting the affirmative defense of necessity. I disagree with the majority's refusal to address this contention. Further, I agree with defendant that he had the right to present the necessity defense to the jury. Accordingly, I dissent.

Initially, I agree with the majority that Illinois Vehicle Code section 11—501(a) (625 ILCS 5/11—501(a) (West 1994)) does not excuse an intoxicated person from

"sleeping it off" in a parked vehicle. The majority correctly interprets section 11—501(a), based on the provision's plain language, supported by the rationale that an intoxicated person who is "sleeping it off" can easily start the vehicle and endanger life and property. 175 Ill. 2d at 401-06.

## Waiver

Although I agree with the majority's above-mentioned interpretation of the Illinois Vehicle Code, I disagree with the majority's application of the waiver doctrine to the issue of the necessity defense. The appellate court addressed the issue in its unpublished order. In this court, both sides fully discussed the issue in their briefs and during oral argument. However, the majority concludes that defendant waived the issue because he failed to include it in his petition for leave to appeal to this court. 175 Ill. 2d at 405-06.

It is quite settled that the waiver rule is a principle of administrative convenience, an admonition to the parties; it is not a jurisdictional requirement or any limitation upon the jurisdiction of a reviewing court. *In re C.R.H.*, 163 Ill. 2d 263, 274 (1994); *Dineen v. City of Chicago*, 125 Ill. 2d 248, 265-66 (1988). "Thus, a party's failure to assert the argument in the petition for leave to appeal does not preclude consideration of the question on review, and this court has previously considered matters that an appellant omitted from its petition for leave to appeal." *Dineen*, 125 Ill. 2d at 266.

It may seem that a reviewing court is simply vested with unprincipled "discretion," which the court may or may not exercise as it pleases. However, a reviewing court invokes its authority to override considerations of waiver based on the court's responsibility for a just result and to maintain a sound and uniform body of precedent. *People v. Hudson*, 157 Ill. 2d 401, 425 (1993); *Hux v. Raben*, 38 Ill. 2d 223, 224-25 (1967).

In the present case, defendant contends that the trial court committed reversible error by excluding defendant's proffered evidence relevant to the defense of necessity, and by refusing to instruct the jury on that defense. It is doubtful that a jury trial can produce "a just result" if incomplete or inaccurate instructions are used. See, *e.g.*, *People v. Newbolds*, 204 Ill. App. 3d 952, 954-55 (1990). The function of jury instructions is to guide the jury in its deliberations and to help it reach a proper verdict through the application of correct legal principles according to the law and the evidence. *People v. Hester*, 131 Ill. 2d 91, 98 (1989). Appropriate jury instructions are essential to a defendant's right to a fair trial. *People v. Comer*, 78 Ill. App. 3d 914, 916 (1979); accord 75A Am. Jur. 2d *Trial* § 1079, at 610 (1991); 23A C.J.S. *Criminal Law* § 1302, at 207 (1989). Also, there is a "sound and uniform body of precedent" providing that a defendant is entitled to the benefit of any defense shown by the entire evidence. *People v. Bratcher*, 63 Ill. 2d 534, 540 (1976); *People v. Kalpak*, 10 Ill. 2d 411, 424 (1957). I conclude that these rights override considerations of waiver in this case.

### Necessity Defense

Turning to the merits, I agree with defendant that he had the right to present the defense of necessity to the jury. The record shows that prior to trial, the trial court granted the City's motion *in limine* to bar defense testimony concerning defendant's intention or reason for sleeping in his vehicle. In support of his motion to reconsider the ruling, defendant made the following offer of proof. Danielle, defendant's girlfriend, was living in the apartment of her friend and her friend's mother. The mother of Danielle's friend would not allow defendant to stay in their apartment. Defendant had only 25 cents, had no place to go, and had no other choice but to sleep in his vehicle in the apartment complex's parking

lot. The trial court denied defendant's motion to reconsider.

Motions *in limine* are encouraged in criminal cases to exclude collateral or extraneous matters. However, the motion should be used with caution so as not to deprive a defendant of a legally viable defense. A trial court must be certain that the grant of a motion *in limine* will not unduly restrict the opposing party's case. A reviewing court will not reverse a trial court's grant or denial of a motion *in limine* absent an abuse of discretion. *People v. Berquist*, 239 Ill. App. 3d 906, 908 (1993); *People v. Downey*, 162 Ill. App. 3d 322, 334 (1987).

In the present case, the trial court's grant of the City's motion *in limine* deprived defendant of a legally viable defense—the affirmative defense of necessity. A defendant is entitled to the benefit of any defense shown by the entire evidence, and has the right to have the jury instructed as to the law applicable to any state of facts which the jury might legitimately find to have been proved from the evidence. *Kalpak*, 10 Ill. 2d at 424. A defendant is so entitled even if the evidence on which such defense is based is inconsistent with the defendant's own testimony (*People v. Janik*, 127 Ill. 2d 390, 398 (1989); *Bratcher*, 63 Ill. 2d at 540), or of doubtful quality (*People v. Lyda*, 190 Ill. App. 3d 540, 544-45 (1989)). If the State's evidence does not raise the issue of the affirmative defense, a defendant, to raise the issue, must present "some evidence" thereon. *People v. Unger*, 66 Ill. 2d 333, 338 (1977); 720 ILCS 5/3—2(a) (West 1994).

The trial court may not weigh the evidence in deciding whether an issue has been raised entitling a defendant to an instruction. *Lyda*, 190 Ill. App. 3d at 544; *People v. Sweeney*, 114 Ill. App. 2d 81, 89 (1969). The evidence supporting the affirmative defense must be sufficient to raise an issue of fact for the jury, creating a reasonable doubt as to defendant's guilt. *People v. Red-*

*mond,* 59 Ill. 2d 328, 337-38 (1974). In other words, unless the evidence before the trial court is so clear and convincing as to permit the court to find as a matter of law that there is no affirmative defense, the factual issue must be determined by the jury with proper instruction on the applicable law. *People v. Larry,* 144 Ill. App. 3d 669, 676 (1986); *People v. Adcock,* 29 Ill. App. 3d 917, 919 (1975).

The Criminal Code of 1961 defines necessity as follows:

"§ 7—13. Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7—13 (West 1994).

Necessity is an affirmative defense. 720 ILCS 5/7—14 (West 1994). "This defense is viewed as involving the choice between two admitted evils where other optional courses of action are unavailable [citations], and the conduct chosen must promote some higher value than the value of literal compliance with the law [citation]." *Janik,* 127 Ill. 2d at 399.

I conclude that the entire evidence, which includes defendant's offer of proof, entitled defendant to raise the affirmative defense of necessity. The following evidence was undisputed. Defendant became intoxicated at a party at his home. Defendant knew he was intoxicated; he further knew that he should not and would not drive. However, Danielle did not want to spend the night at defendant's home; rather, she wanted to return to her friend's apartment. Defendant did not loan Danielle his car because he needed it. For whatever reason, Danielle drove defendant to the apartment in his car. Defendant and Danielle planned for defendant to spend the night with Danielle at her friend's apartment. However, her

friend's mother would not allow defendant to stay in the apartment. Defendant never drove his car that night and did not intend to do so while intoxicated. For whatever reason, defendant had only 25 cents, had no other place to go, and had no available means to return home. Consequently, defendant slept in his car in the apartment complex's parking lot.

The appellate court held that the trial court did not err in barring defendant from asserting the necessity defense. The appellate court's analysis of this issue was erroneous. The court concluded that defendant was not without blame in occasioning the situation because: (1) he voluntarily became intoxicated that night, and (2) "[i]nstead of remaining at his house and allowing his girlfriend to take his car home, he went with her in an intoxicated state hoping to spend the night at her apartment." However, defendant was drinking in his home with no intention of driving that night. Additionally, the appellate court ignored defendant's testimony that he simply needed his car.

The appellate court also declared without explanation that "there were other reasonable alternatives to defendant sleeping in his car with the engine running while he was intoxicated." However, the appellate court ignored the fact that defendant presented some evidence that he had no reasonable alternative.

Of course, the jury could have doubted defendant's evidence. However, it is clear that defendant presented some evidence to support the defense of necessity. No other options being available, defendant chose the lesser of two evils by sleeping in his car in a parking lot, rather than driving it and endangering persons and property. This evidence was sufficient to justify the raising of the defense and to have the jury consider it with appropriate instructions. See *Unger*, 66 Ill. 2d at 341; *People v. Blake*, 168 Ill. App. 3d 581, 586-87 (1988).

412

For the foregoing reasons, I would reverse the judgments of the appellate court and the circuit court of Du Page County, and remand the cause for a new trial. Accordingly, I dissent.

JUSTICE McMORROW joins in this dissent.