THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN W. BORST, Defendant-Appellant.

Second District   No. 2—86—0123

Opinion filed November 24, 1987.

Peter J. Dockery, Public Defender, of Wheaton (John G. Skoubis, Assistant Public Defender, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Dale M. Wood, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, John W. Borst, was charged with driving under the influence of alcohol in violation of section 11—501(a)(2) of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(2)), being in actual physical control of a vehicle with a blood-alcohol concentration of .10 or more in violation of section 11—

501(a)(1) of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(1)), and resisting a peace officer. He was convicted by a jury of driving with a blood-alcohol concentration of .10 or more, and of resisting a peace officer, and found not guilty of the other charge. He was fined $100 plus costs and sentenced to one year of reporting probation. He was also ordered to perform 120 hours of public service and to attend DUI school as conditions of his probation. Defendant appeals only the DUI conviction, and we affirm.

At trial, Officer Mark Edwalds of the Du Page County sheriff's department testified that on March 1, 1985, at approximately 3:22 a.m., he noticed defendant's car parked on the shoulder of Roosevelt Road near the East-West Tollway with its lights on. As Officer Edwalds approached the car, he noticed defendant sitting upright in the driver's seat with his head down. Defendant was asleep, the car was in park, and the key was in the on position, but the motor was not running. Officer Edwalds woke defendant by knocking on the window and asked to see defendant's driver's license. Edwalds noticed a strong odor of alcohol when defendant opened his window. As defendant was looking through his wallet, he said he was just taking his girlfriend home and was then going home himself. When Officer Edwalds pointed out that defendant was alone in the car, defendant responded that he must have already dropped his girlfriend off.

Edwalds then requested that defendant perform field sobriety tests. Defendant replied that he had only had a few beers and did not need the tests. When Edwalds insisted, defendant mocked the finger to nose test by touching various parts of his face with both hands. After being instructed in the proper procedure for the test, defendant twice hit the bridge of his nose with the base of his right index finger, touched his lips with his left index finger once, and finally touched the tip of his nose with his left index finger. Officer Edwalds then asked defendant to recite the alphabet, but after the letters A, B, C, defendant's response was slurred and unintelligible. Defendant then said the field tests were "bullshit" and demanded a blood test.

After defendant's performance on the alphabet test, Officer Edwalds advised defendant that he was under arrest for DUI and asked him if he would take a breathalyzer test, to which defendant agreed. Edwalds then tried to put handcuffs on defendant, but defendant resisted, stating that he would not be arrested and that he wanted to go to the Westchester, Illinois, police station (which is in Cook County) for a blood test. After several unsuccessful attempts to handcuff defendant, Edwalds called for assistance. While Edwalds was on the radio, defendant got back in his car and tried to start it.

Edwalds told defendant to get back out, and when defendant did so, he staggered into the roadway.

Another officer arrived and defendant was finally handcuffed. He was then taken to the Lombard police station for a breathalyzer. Defendant was given the breath test and then was taken to the Du Page County jail, where he was interviewed by Officer Edwalds. Defendant admitted drinking beer earlier that evening and also stated that he had not eaten in two days. Sergeant Dillenkoffer of the Lombard police department testified that he administered the breathalyzer to defendant. He described his qualifications and the manner of testing. He stated that, according to the results of the test, defendant's blood-alcohol concentration was .10 at 4:16 a.m. on March 2, 1985.

Defendant testified as to his activities of March 1 and 2, 1985. He stated that he had nothing to eat during the day of March 1. In the evening he practiced with his band at a friend's house and then went to a tavern in Lyons, Illinois, where he had between one and five draft beers. He left the tavern at 12 midnight to take his girlfriend home. He arrived at her house between 12:30 and 12:45 a.m. and stayed there until 2 or 2:15 a.m. He then started for home but ran out of gas on Roosevelt Road, so he pulled over to the shoulder.

Defendant testified that no gas stations were open along that part of Roosevelt Road, so he decided to rest and wait until morning. He also testified that he was tired from a busy schedule that day and added that he had been in the hospital a week before for treatment of a concussion sustained in a fall. Although he was not taking medication that night, he testified to having headaches and back problems from the fall.

Defendant then testified to his version of the encounter with Officer Edwalds. He testified that he performed the field sobriety tests as requested, including walking a straight line. He also repeatedly requested a blood test. He described his arrest and the breathalyzer test. He stated that he had slept only four hours the previous night, and that he was not under the influence of alcohol the night he was arrested. After closing arguments, instructions were read to the jury without objection.

■ Defendant first argues that he was denied due process of law because of a variance between the complaint and the proof adduced at trial. The statute under which defendant was charged and convicted, section 11—501(a)(1) of the Code, provides as follows:

"Driving under the influence of alcohol, other drug, or combination thereof. (a) A person shall not drive or be in actual physical control of any vehicle within this State while:

> 1. The alcohol concentration in such person's blood or breath is 0.10 or more." (Ill. Rev. Stat. 1985, ch. 95½, par. 11–501(a)(1).)

From this language, defendant concludes that there are two alternative methods of violating the statute: (1) driving a vehicle or (2) being in actual physical control of one. Arguing that the complaint only charged him with illegally being in "actual physical control" of his car, but that he was convicted of illegally *driving* the vehicle, defendant contends that he was thus convicted of a charge not made.

Defendant has not cited authority for the proposition that the statute defines two alternative offenses. We are aware, however, of at least one Illinois case which holds to the contrary. In *People v. Clark* (1977), 47 Ill. App. 3d 568, the defendant argued that he, too, had been convicted of a crime not charged because while he had been charged with driving while intoxicated, the instructions permitted the jury to find him guilty of being in actual physical control of a vehicle while intoxicated. The *Clark* court rejected this argument, stating:

> " 'It is apparent from the cases referred to that the term "driving" is used to include both the actual operation of a moving vehicle and the circumstance of being "in actual physical control" of the vehicle, even though the vehicle may not be moving.' " (*People v. Clark* (1977), 47 Ill. App. 3d 568, 570, quoting *People v. Guynn* (1975), 33 Ill. App. 3d 736, 738.)

Like the *Clark* court, we also "do not believe that the statute defines two disparate and alternative offenses." (*People v. Clark* (1977), 47 Ill. App. 3d 568, 570.) We thus find no fatal variance here between the complaint and the proofs.

Even if we were to accept defendant's argument that the statute sets forth two distinct methods of committing the offense, thus creating a variance between the complaint and the proofs, we would find no reversible error. The standard of review on this issue was articulated in *People v. Taylor* (1980), 84 Ill. App. 3d 467:

> "In examining the effect of a variance between the charging instrument and the proof presented at trial, the test is whether the offense charged is sufficiently set forth so that an accused can properly prepare his defense and raise the judgment as a plea in bar to a later prosecution for the same offense. If those requirements are satisfied, a variance between the allegations and proof will not be fatal. [Citations.] To be fatally defective, the variance must be material and of such character as to have misled the accused in making his defense or exposed him to double jeopardy. [Citation.] In applying this test, all of the evi-

dence produced at trial can now be considered in determining whether a trial is a bar to future prosecutions. [Citation.]" *People v. Taylor* (1980), 84 Ill. App. 3d 467, 469-70.

■ Defendant contends he was misled by the complaint in the preparation of his defense. He states that in preparing to defend the charge of actual physical control, trial counsel decided to present evidence of what defendant had done throughout the day and "may not" have presented that evidence if it was known that the State would allege driving. He does not contend, however, that any defense testimony was inaccurate or omitted because of the wording of the complaint. (See, *e.g.*, *People v. Clark* (1977), 47 Ill. App. 3d 568, 571.) We do not believe that mere speculation as to whether or not defense evidence would have been presented is sufficient to show that defendant was misled in preparing his defense. More importantly, the complaint which charged defendant with violation of section 11–501(a)(2) of the Code alleged that defendant "drove or was in actual physical control of a vehicle" while he was under the influence of alcohol. Since defendant was thereby apprised that both driving and actual physical control would be at issue, he was thus clearly not misled in preparing his defense.

■ Nor do we believe that defendant will be exposed to the possibility of double jeopardy. The complaint named the offense and its date, place, and time. It is sufficient to be pleaded in bar of any further prosecution, and if such prosecution were attempted, prior prosecution on the same facts may be proved by resort to the record. *People v. Johnson* (1976), 65 Ill. 2d 332, 339.

■ Defendant next contends that he was not proved guilty beyond a reasonable doubt of driving with a blood-alcohol concentration of .10 or more. Specifically, defendant argues that, since his car could not be started, he did not have actual physical control of a vehicle. Alternatively, defendant argues that there was no proof that he actually drove his car with a blood-alcohol concentration of .10 or more.

Defendant's contention must be viewed in light of the entire record. (*People v. Fenelon* (1973), 14 Ill. App. 3d 622, 626.) It is our duty to reverse a conviction where the record reveals a reasonable doubt that the defendant operated a motor vehicle while under the influence of alcohol. (*People v. Foster* (1985), 138 Ill. App. 3d 44, 47; *People v. Flores* (1976), 41 Ill. App. 3d 96, 101.) We will not disturb a conviction, however, unless the evidence is so unreasonable, improbable or unsatisfactory as to justify reasonable doubt of the defendant's guilt. (*People v. Heimann* (1986), 142 Ill. App. 3d 197, 199.) We find sufficient evidence here to support the jury's conclusion that defendant

drove his vehicle while his blood alcohol concentration was .10 or more.

■■ "The law in Illinois is well established that a defendant need not be observed in the act of driving or the vehicle be moving where these elements of the offense can be proved by circumstantial evidence and there is a reasonable and moral certainty the accused committed the crime." (*People v. Johnson* (1976), 40 Ill. App. 3d 982, 983.) The defendant here was found asleep behind the wheel of his car with the lights on and the key in the on position. He told Officer Edwalds he had dropped off his girlfriend and was going home himself. He admitted drinking several beers, and that he had eaten nothing all day. Officer Edwalds testified that defendant emitted an odor of alcohol, was uncooperative, and did not perform the field sobriety tests well. Under these circumstances, the jury could reasonably conclude that defendant actually drove while his blood-alcohol concentration was above the legal limit.

■■ Defendant also argues that, due to the delay between the time he drove and the time he took the breathalyzer, the test result showing his blood-alcohol concentration to be .10 is insufficient to support his conviction. We do not find this argument persuasive. Delays between driving and breathalyzer testing "are properly viewed as going to the *weight* of the breathalyzer test results, and as such must be viewed in light of the circumstances surrounding the arrest." (Emphasis in original.) (*People v. Kappas* (1983), 120 Ill. App. 3d 123, 129.) As noted above, the breathalyzer results here are corroborated by the surrounding circumstances, and we hold that the evidence presented is sufficient to support defendant's conviction.

We thus find it unnecessary to address defendant's argument that his car did not constitute a vehicle at the time of arrest. We would point out, however, that *People v. Johnson* (1976), 43 Ill. App. 3d 428, the case on which defendant relies for this proposition, is not applicable to the present case. While the *Johnson* court found that defendant's car no longer fit the definition of "vehicle" (*People v. Johnson* (1976), 43 Ill. App. 3d 428, 430-31), the statute defining "vehicle" has since been amended. A "vehicle" now continues to be considered a "vehicle until such time it either comes within the definition of a junk vehicle, as defined under [the] Code, or a junking certificate is issued for it." (Ill. Rev. Stat. 1985, ch. 95½, par. 1—217.) There is no evidence here that defendant's car fit the description of a "junk vehicle" (Ill. Rev. Stat. 1985, ch. 95½, par. 1—134.1), or that a junking certificate had been issued for it.

■■ Finally, we find that defendant has waived the right to raise

error in the jury instructions. Although defendant now argues that submission of the State's instructions defining the offense charged was misleading, defense counsel did not object to the State's instructions despite being given the opportunity to do so. After reading the instructions to the jury, the trial judge stated for the record:

> "[T]here has been a conference on instructions in which the instructions were reviewed by the attorneys and the judge. It was outside the presence of the court reporter.

> And I have read the instructions to the jury as tendered by the State.

> I believe there has not earlier been any objection made to any of the instructions.

> Do you have anything else, [Defense Counsel]?

> [DEFENSE COUNSEL]: No, your Honor."

The foregoing is contrary to defense counsel's affidavit in support of her post-trial motion in which counsel stated that she had objected to the instructions at the conference. Furthermore, we cannot accept counsel's explanation that her failure to place her objections on the record was because she was too surprised and discouraged by the court's position at the instruction conference to do so.

As was explained in *People v. Roberts* (1979), 75 Ill. 2d 1, 11, the reason for the waiver rule "is that timely objections to defective instructions permit the court to correct the defects before the instructions are given, and do not therefore permit a party failing to object to gain the advantage of obtaining a reversal based upon his own failure to act." Had this defendant's objection been made at the time the instructions were given, the trial court could have cured the error, if any. (See, *e.g., People v. Deacon* (1985), 130 Ill. App. 3d 280, 289.) Thus, even though defendant argued in the post-trial motion that the instructions were erroneous, at that point it was too little, too late. We will not allow a defendant to sit mute while instructions are given and only after conviction object to the instructions as grounds for reversal. The issue has been waived.

■ Although defendant urges us to relax the waiver rule and apply the "plain error" exception, we decline to do so. "Plain error is a narrow and limited exception to the general waiver rule." (*People v. Pastorino* (1982), 91 Ill. 2d 178, 188.) The exception is "confined to correction of 'grave errors' [citations], or to instances where the case is so close factually that fundamental fairness requires the jury be properly instructed." (*People v. Berry* (1984), 99 Ill. 2d 499, 505.) In this case we are not convinced that the jury was improperly instructed or was in any way misled. As noted above, defendant was

838

aware throughout the trial that driving was at issue, and, in fact, defense counsel's arguments were consistently phrased in terms of driving. We find no prejudice and decline to invoke the plain error exception.

In summary, we find no reversible variance between the wording of the complaint and the proofs adduced at trial. We also conclude that it was proved beyond a reasonable doubt that defendant drove his vehicle and, that at the time he drove, his blood-alcohol concentration was .10 or more. Any error in the instructions has been waived. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

WOODWARD and UNVERZAGT, JJ., concur.