THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
CARLA M. REARDON, Defendant-Appellee.

Third District   No. 3—90—0266

Opinion filed March 28, 1991.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Elizabeth A. Klug, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Frederick A. Bernardi, of Pekin, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Carla M. Reardon, was charged by information with driving with a blood-alcohol content of .10 or more (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(1)). Following a hearing, the trial court granted her third motion to suppress. The State appeals the suppression order.

The record shows that the defendant was involved in a serious car accident on February 26, 1988, about 11:45 p.m. The defendant's father testified that he was at the hospital when the defendant arrived at 12:53 a.m. Mr. Reardon stayed with his daughter at the hospital for the next 36 hours. He noted that Dr. Robert Wolford, the emergency room physician on duty that night, ordered various tests. Dr. Wolford subsequently referred the patient to the trauma unit, where Dr. Fred Braastad assumed her care about 1:40 a.m. At 2 a.m., a hospital technician withdrew blood from the defendant.

Katherine Cagle, a medical records department supervisor, testified that State's exhibit No. 1 was a copy of the only record possessed by the hospital indicating any of the defendant's blood alcohol test results. Cagle further testified that she was not familiar with how information was transferred from the lab to the emergency room or how the document in question was compiled. She admitted that there might be some interdepartmental documents that were not sent to her department.

Dr. Robert Wolford testified that he was the emergency room physician on duty when the defendant arrived at the hospital around 1 a.m. He ordered a trauma profile consisting of a battery of tests, including blood tests, performed on her. Dr. Wolford stated that he did not receive the results of those tests because he referred the defendant to the trauma service a few minutes after his initial evaluation. He noted that nursing records showed that Dr. Braastad, the senior trauma unit surgical resident on call at the time, arrived at 1:40 a.m. and assumed the defendant's care.

Dr. Wolford further testified that State's exhibit No. 1 looked like a final copy of the defendant's lab reports. He explained that normally that kind of report was not received in the emergency room. Instead, the emergency room received a disposable copy from the computer printer, which was then attached to the patient's chart while she was in the emergency room. Once a doctor had re-

viewed and considered the computer printout copy of a patient's lab test results, that copy was attached to an emergency department pink copy. It was thereafter kept in the emergency department for two months. The results, but not the exact printout containing them, were ultimately recorded in the patient's file.

Dr. Wolford further stated that although he did not receive a written result of the defendant's blood test he believed that Dr. Braastad did. Although it is not entirely clear from the record, it appears that Dr. Wolford noted that State's exhibit No. 1 showed that the defendant's blood-alcohol content was .145.

Dr. Fred Braastad stated in his deposition that on February 27, 1988, he helped treat the defendant. Between midnight and 3 a.m., he did not order any blood-alcohol tests for the defendant. He further stated that he did not receive or consider State's exhibit No. 1 in his treatment or diagnosis of the defendant.

The evidence depositions of Drs. Robert R. Archer and Jeffrey F. Traina were also introduced into evidence. Both doctors stated that they treated the defendant but did not order blood tests for her. Dr. Archer indicated that he did not receive or consider a blood-alcohol report to assist him in either the diagnosis or treatment of the defendant at the hospital emergency room or prior to her surgery at noon on February 27.

Dr. Traina testified that he considered the information in State's exhibit No. 1 giving the defendant's blood count. He further testified, however, that he did not consider the blood-alcohol content information in State's exhibit No. 1 and was not aware that such a test was conducted.

Based on the foregoing evidence, the trial court granted the defendant's motion to suppress her blood-alcohol test results. The court ruled that the conditions set forth in section 11—501.4(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4(a)) were not met in this case.

The State thereafter filed a motion to reconsider. At the hearing on the motion, the State submitted Dr. Braastad's affidavit, in which he indicated that on February 27, 1988, he had received and considered the defendant's lab results, including her blood-alcohol content, for the purpose of assisting him in her diagnosis and treatment.

Defense counsel argued that the applicable statute required that the physician receive and consider "written" results in order for those results to be admissible. He then pointed out that Dr. Braastad's affidavit did not indicate whether the results were written.

The trial court agreed and granted the defendant's motion to suppress, noting that it was suppressing only State's exhibit No. 1 and not any other blood-alcohol reports which might exist but were not produced.

On appeal, the State contends that the trial court erred in granting the defendant's motion to suppress.

■■ Section 11—501.4(a) of the Code provides the following:

"(a) Notwithstanding any other provision of law, the *written* results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only *** when each of the following criteria are met:

(1) the blood alcohol tests were ordered by a physician on duty at the hospital emergency room and were performed in the regular course of providing emergency medical treatment in order to assist the physician in diagnosis or treatment;

(2) the blood alcohol tests were performed by the hospital's own laboratory; and

(3) the *written* results of the blood alcohol tests were received and considered by the physician on duty at the hospital emergency room to assist that physician in diagnosis or treatment." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4(a).

■■ ■ Absent an ambiguity, language in a statute should be given its plain and ordinary meaning. (*People v. Algarin* (1990), 200 Ill. App. 3d 740, 558 N.E.2d 457.) On review, a trial court's determination regarding a motion to suppress will not be disturbed unless it was clearly erroneous. *People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.

■■ Under the circumstances presented in the instant case, we find that the above-quoted statute is clear and unambiguous. It plainly provides that emergency room blood-alcohol test results are admissible in evidence only when the "written" results were received and considered by the physician on duty in the hospital emergency room. Here, all of the defendant's treating physicians testified that they did not read the blood-alcohol information contained in State's exhibit No. 1. Although Dr. Braastad attested that he considered the defendant's blood-alcohol content, he did not say that he considered written results of State's exhibit No. 1. Moreover, the written report of the blood-alcohol test was not produced until after the date of the emergency room treatment. Under these

circumstances, we find that the State failed to comply with the statute and therefore the test results offered by the State were inadmissible. Accordingly, we hold that the trial court's determination was not clearly erroneous.

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY and SLATER, JJ., concur.