THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN NIEMIRO, Defendant-Appellant.

First District (5th Division)   No. 1—92—1065

Opinion filed November 5, 1993.

Alan S. Nagel, of Grodner & Nagel, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Karen O'Malley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

On December 5, 1991, after a bench trial, defendant John Niemiro (Niemiro) was found guilty of the felony of driving while under the influence of alcohol. (Ill. Rev. Stat. 1989, ch. 95$^{1}/_{2}$, pars. 11—501(a)(1), (a)(2), (d)(3); 625 ILCS 5/11—501(a)(1), (a)(2), (d)(3) (West 1992).) He was sentenced on March 16, 1992, to six months' incarceration in Cook County jail and 30 months' probation, the first 12 months to be intensive probation. Niemiro appeals his conviction and sentence, claiming: (1) that the State failed to prove beyond a reasonable doubt that he was driving or in actual physical control of a motor vehicle at the time in question, (2) assuming that control of the motor vehicle was proved, the State failed to prove that his operation of the vehicle was the proximate cause of the victim's injuries, (3) that the trial court erred in admitting the results of blood-alcohol tests into evidence pursuant to the "emergency room exception," and (4) that the trial court erred in admitting into evidence blood-alcohol tests requested by the arresting officer. For reasons that follow, we affirm the rulings and judgment of the trial court.

The uncontested evidence showed that on September 10, 1989, at about 2:50 a.m., a 1978 Malibu automobile was traveling southbound in the northbound lanes on Interstate 294. It collided with a limousine and then struck a red Mustang automobile head-on. The Mustang, which held four occupants, was severely damaged and the driver of this vehicle, Jenifer Tomaszewski, was seriously and permanently injured. Due to the circumstances, no one observed the driver of the Malibu prior to the accident and Niemiro made no admissions concerning the driving of the vehicle.

Nevertheless, the evidence further showed that within two minutes of the accident, Christina Terry, the front-seat passenger in

the Mustang, exited her vehicle to view the scene. At about the same time she saw a person (not Niemiro) exit the passenger side of the Malibu automobile. This person walked up to the Mustang car, yelling profanities. About two to three minutes later, Terry walked over to the Malibu car and looked inside. There she saw Niemiro "passed out" behind the driver's wheel. Terry testified that Niemiro's body was positioned behind the wheel, but his head was "laying down toward the passenger door." (The witness demonstrated the position for the court.)

Illinois State Trooper Raymond Przybylski, who had responded to the accident scene within nine minutes of its occurrence, also testified. He stated that upon his arrival at the accident scene he first approached the Mustang to check for injuries. He learned that there had been four persons inside this vehicle and that the driver was seriously injured. After a few minutes spent assessing the injuries of the persons in the Mustang, he approached the Malibu. Approximately 12 minutes after the accident occurred, Trooper Przybylski found Niemiro inside the Malibu, seated behind the steering wheel, slumped down, with his head tilted toward the passenger side. The other person who had been riding in this vehicle was standing outside the car.

Trooper Przybylski testified that he spoke with Niemiro as he sat in his vehicle and that Niemiro's speech was slurred and his eyes were bloodshot and glassy. He also observed beer bottles on the front-seat floor of the Malibu.

Shortly thereafter Niemiro was taken to Loyola Hospital, where he was treated for injuries he had sustained. Blood samples were taken at the request of the emergency room physician at approximately 3:50 a.m. and again at 5:12 a.m., after Trooper Przybylski obtained Niemiro's consent. Niemiro's blood-alcohol levels were determined from these samples, and the results of both blood-alcohol tests were admitted into evidence at trial over Niemiro's objection.

At the close of the State's case Niemiro moved for a directed finding. The trial court denied the motion. Niemiro called no witnesses at trial and, after argument, the trial court found Niemiro guilty of driving under the influence of alcohol. Subsequently, Niemiro filed a motion for a new trial, which was also denied. This appeal followed.

Before addressing the issues raised in this appeal, we feel we must first address points not raised by either party. Upon reviewing Niemiro's brief, this court was struck by the unchallenged comments in his "Statement of Facts" section. Niemiro stated therein that he was charged in a three-count indictment with "various forms" of

driving under the influence of alcohol and, while in that condition, being involved in a motor vehicle accident which caused great bodily harm to others. He then went on to state that count I charged him with driving a motor vehicle with a blood-alcohol content greater than .10, that count II charged him with driving a motor vehicle while under the influence of alcohol, and count III charged him with driving and being in actual physical control of a motor vehicle while under the influence of alcohol. The brief then reported that "defendant was found guilty of Counts I and II and not guilty of Count III" and that "the Court held that Count II merged into Count I."

Believing that this ruling was somewhat curious, a close review of the record and transcript was conducted. Our review revealed a disturbing lack of attention to detail that seems to have been rampant in this case. First, the indictment contained variances between the statements of the crimes charged and the references to the statutory provision. Specifically, count I charged Niemiro with driving with a blood-alcohol level greater than .10 *and* being involved in a motor vehicle accident causing great bodily harm, but made reference only to section 11—501(a)(1) of the Illinois Vehicle Code (Code), not section 11—501(d)(3), which discusses the aggravating factor of the motor vehicle accident. The same error was repeated in count II, which charged Niemiro with driving under the influence of alcohol and being involved in a motor vehicle accident. However, in addition, this count alleged a violation of section 11—501(a)(1) of the Code, rather than making the proper reference to section 11—501(a)(2) of the Code. Finally, count III recited that Niemiro was charged with driving and being in actual physical control of a motor vehicle while under the influence of alcohol and being involved in a motor vehicle accident, but made reference only to section 11—501(d)(3) of the Code.

These discrepancies in the charging instrument are disturbing variances which are of concern in this case because of the issues raised by defendant on appeal. Also, defendant is correct in noting that the "half-sheet" indicates "Fg Count I and II, Fng Count III, Judgment on Count I...." If this entry correctly reflects the trial court's findings and Niemiro was found not guilty of count III and judgment was entered only on count I, we question whether "actual physical control" is an issue in this case. At the same time, if the trial court found defendant guilty of driving while intoxicated, as well as having a blood-alcohol content greater than .10, then the admissibility of the blood-alcohol tests may be irrelevant.

We must stress here that defendant does not raise any issue concerning the variances in the charging instrument, as noted above.

Therefore, this court has chosen not to rely on the references to the Code made in the counts of the indictment, but rather the actual language of the charging instrument. Furthermore, in deciding the basis for the trial court's finding Niemiro guilty on the charge of driving while under the influence of alcohol, we will consider the trial court's oral pronouncements as reflected in the transcripts of the proceedings. In doing so, we find that the trial court clearly and unequivocally held that Niemiro was driving *and* in actual physical control of a motor vehicle, that he was operating a vehicle while under the influence of alcohol, that he had a blood-alcohol content greater than .10, and that while driving intoxicated he became involved in a motor vehicle accident which caused great bodily harm to another. This appears to be defendant's interpretation of the trial court's rulings as well. Having determined the ruling of the trial court, we now consider Niemiro's allegations of error.

■ In his first issue on appeal Niemiro argues that, despite the unrebutted testimony of two witnesses that minutes after the accident he was found slumped behind the wheel of the Malibu automobile, there was insufficient evidence for the trial court to have found that he had been driving or in actual physical control of the Malibu automobile at the time of the accident. We disagree.

The statute involved here is section 11—501 of the Illinois Vehicle Code (the Code), which states in pertinent part:

"Driving while under the influence of alcohol, other drug, or combination thereof. (a) A person shall not drive or be in actual physical control of any vehicle within this State while:

(1) The alcohol concentration in such person's blood or breath is 0.10 or more ***;

(2) Under the influence of alcohol;

* * *

(d) Every person convicted of committing a violation of this Section shall be guilty of a Class 4 felony if:

* * *

(3) such person in committing a violation of paragraph (a) was involved in a motor vehicle accident which resulted in great bodily harm or permanent disability or disfigurement to another, when such violation was the proximate cause of such injuries." Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501(a)(1), (a)(2), (d)(3); 625 ILCS 5/11—501(a)(1), (a)(2), (d)(3) (West 1992).

The term "driving under the influence" as used within the statute may encompass both the situation where defendant is shown to have been operating a vehicle and the situation where defendant is

shown to have been exerting actual physical control over the vehicle, even though the vehicle was not shown to be moving. *People v. Borst* (1987), 162 Ill. App. 3d 830, 834, 516 N.E.2d 854.

As the trial court indicated when it ruled in the present case, if a person is shown to be operating a vehicle, that person is also, by the very nature of operating that vehicle, exerting actual physical control over the vehicle. The opposite is not always true, however. A person who is shown to be exerting physical control over a vehicle need not be shown to have been operating the vehicle, but only that the person had the capability or potential to do so. Thus, when there has been no evidence that the vehicle in question was moving or being operated at the time in question, other evidence must be presented to show that control over the vehicle was being exerted by the defendant. Such was the case in *People v. Davis* (1990), 205 Ill. App. 3d 431, 562 N.E.2d 1152, cited to by Niemiro. See also *People v. Cummings* (1988), 176 Ill. App. 3d 293, 530 N.E.2d 672 (defendant was discovered by police officer, slumped over steering wheel of the car stuck in a ditch).

In *Davis*, the defendant was discovered by an Illinois State trooper in a parked car on the right shoulder of Frontage Road. Defendant was alone in the vehicle, inside a sleeping bag, in the back seat of the car. The keys were in the ignition, although the car was not running, and the car doors were locked. The reviewing court discussed at length what constitutes "actual physical control" within the meaning of the statute. Noting first that the issue is a factual question to be decided on a case-by-case basis (*Davis*, 205 Ill. App. 3d at 435, citing *People v. Cummings* (1988), 176 Ill. App. 3d 293, 295, 530 N.E.2d 672), the *Davis* court noted the following factors to be considered: (1) whether defendant was positioned in front of the driver's seat, (2) whether defendant had possession of the ignition key (which would indicate the capability to start the vehicle), (3) whether defendant was alone in the vehicle, and (4) whether the vehicle doors were locked. (*Davis*, 205 Ill. App. 3d at 435.) After discussing these factors, the *Davis* court held that the defendant in that case was shown to be in control of the vehicle despite the fact that he was not in the driver's seat at the time he was discovered. The court held that occupying the driver's seat, although one factor to be considered, was not an essential element of the statute and that the totality of the circumstances suggested that the defendant was in actual physical control of the vehicle.

In the present case we need not concern ourselves with the many factors which indicate "actual physical control" since at the time in question, *i.e.*, at the time the accident occurred, the vehicle was being operated. The evidence established that the Malibu vehicle was being

operated in the wrong direction on Interstate 294. It is obvious from this evidence that *someone* was driving or operating the vehicle and, by that action, exercising actual physical control over its movement. Thus, the issue in this case is whether there was sufficient evidence for the court to have found that it was Niemiro who was operating the vehicle at the time of the accident. After considering all the testimony, we find that the trial court's decision that Niemiro was driving the Malibu at the time of the accident was not against the manifest weight of the evidence.

As Niemiro correctly notes, observation of the defendant in the act of driving is not an indispensable prerequisite for a conviction for driving under the influence and the act may be established by other evidence, direct or circumstantial. (*People v. Foster* (1985), 138 Ill. App. 3d 44, 485 N.E.2d 603; *People v. Williams* (1976), 44 Ill. App. 3d 845, 358 N.E.2d 1324.) In this case, Niemiro's counsel vehemently argues that the only evidence presented on the issue of Niemiro being the driver of the Malibu was the evidence that Niemiro was seated in the front seat of the vehicle shortly after the accident. He argues further that the lack of evidence concerning Niemiro's whereabouts during the first few minutes after the accident and after Christina Terry observed him gives rise to an infinite number of possibilities, which could be inconsistent with a finding that Niemiro was driving the vehicle. We believe that Niemiro's argument is without merit.

The testimony in this case revealed that a person other than Niemiro exited the Malibu within two to three minutes of the crash and that this person exited the passenger-side door of the vehicle. The evidence also showed that two to three minutes later Christina Terry observed Niemiro "passed out" inside the Malibu, and that his position within the car was consistent with his being the driver of the vehicle, *i.e.*, he was seated in front of the driver's wheel, albeit slumped over to the side. Furthermore, 5 to 10 minutes later, after Trooper Przybylski arrived on the scene, he observed Niemiro in virtually the same position inside the Malibu that he was seen in earlier by Christina Terry.

We believe that the reasonable inference that may be drawn from this evidence is that the other person exited the passenger-side door because he had been the passenger. It seems improbable, if not impossible, that the other person was the driver of the Malibu, that he occupied the driver's seat at the time of the accident and then, within two minutes of the crash, climbed over Niemiro, moved Niemiro into the driver's seat and exited the vehicle from the passenger-side door. Also, because Christina Terry saw Niemiro "passed out" in

the Malibu within three to four minutes of the accident and Niemiro's position within the Malibu did not change significantly between the time that Christina Terry observed him and the time that Trooper Przybylski observed him, it seems probable that Niemiro never moved about after the accident.

The case of *People v. Ammons* (1968), 103 Ill. App. 2d 441, 243 N.E.2d 709, cited by Niemiro, is completely inapposite. In *Ammons*, a police officer saw a car moving erratically. Because of his distance from the vehicle, he could see that there were two males in the front seat of the automobile, but could not see the features of the driver. The car turned into an alleyway and he lost sight of the vehicle for a short time. Entering the alleyway, the officer noticed that the car he had been following was parked, with the motor running. Upon closer inspection, defendant was found "prostrate on the floor" of the passenger side of the front seat and no one else was in the car. At trial, both defendant and a witness named Wright testified that Wright had been driving the vehicle on the night in question.

Clearly the situation in *Ammons* is vastly different from the present case. Applying common sense and logic to the circumstances in *Ammons*, one is not led invariably to conclude that the defendant was the driver of the automobile at the time it was seen being operated erratically. But in the present case, where two persons were in the car which was, moments earlier, involved in an accident and one person is seen exiting the passenger side and the other (Niemiro) is seen two minutes later "passed out" in the front driver's-side seat of the car, common sense and logic lead one to conclude that Niemiro was the driver of the vehicle.

We agree that this case evidences some poor preparation on the part of the State's Attorney's office and that more could have been done to link Niemiro to the Malibu.[1] Questions might have been tendered to the witnesses which would have clarified the situation or produced greater evidence of Niemiro's control over the vehicle. Nevertheless, we are convinced to a moral certainty that the evidence that was presented was sufficient to prove beyond a reasonable doubt that Niemiro was the driver of the motor vehicle at the time of the accident. Furthermore, it was for the trier of fact to determine what inferences were to be drawn from the evidence, and we may not disturb a conviction unless the evidence is so unreasonable,

---

[1]Although the State presented evidence that a 1978 Malibu was registered to Niemiro, there was no evidence to show that it was the same 1978 Malibu involved in the accident. Also, no testimony was elicited regarding the presence or possession of the ignition keys to the Malibu.

improbable or unsatisfactory that a reasonable doubt of defendant's guilt exists. ( *People v. Heimann* (1986), 142 Ill. App. 3d 197, 199, 491 N.E.2d 872.) In light of this standard, we must affirm.

■ Niemiro's next argument is that there was insufficient evidence to show that his physical control over the vehicle was the proximate cause of the personal injury accident which occurred. This argument is based upon the premise that there was insufficient evidence that Niemiro drove the vehicle at the time of the accident. Having concluded above that Niemiro had, in fact, been the driver of the Malibu as it traveled in the wrong direction on Interstate 294 and collided with the Mustang driven by Jenifer Tomaszewski, we must also conclude that Niemiro was the proximate cause of the accident which produced Tomaszewski's injuries. Therefore, we find this second issue to be meritless and turn our attention to Niemiro's final issues on appeal concerning the court's admission of the two blood-alcohol test results.

Before addressing these two issues, we must refer back to the trial court's ruling which we determined earlier in this opinion. As noted above, the trial court found that, in addition to having a blood-alcohol level greater than .10, Niemiro was determined to have been under the influence of alcohol. The crime of driving under the influence of alcohol may be upheld without proof of the person's blood-alcohol level if there is sufficient evidence presented from which the trial court could conclude that defendant was under the influence of alcohol. (Ill. Rev. Stat. 1989, ch. $95^1/_2$, par. 11—501(a)(2); 625 ILCS 5/11—501(a)(2) (West 1992).) Defendant does not challenge this, but only argues that the admission of the blood-alcohol tests was error. However, we find that there was more than sufficient testimony concerning the external indicators of Niemiro's intoxicated condition to support the trial court's finding that Niemiro was under the influence of alcohol and we affirm his conviction on that basis.

■ Consequently, the admission of the blood-alcohol test results, even if error, may be deemed harmless beyond a reasonable doubt since we need not rely on it to affirm conviction. Nevertheless, because only two cases, both from the third district, have interpreted section 11—501.4 of the Code, we choose to discuss its application to the facts of this case.

In this case the trial court admitted into evidence the blood-alcohol test performed by Loyola Hospital in the course of Niemiro's treatment in the emergency room. Niemiro argues on appeal that this test should not have been admitted into evidence. He claims that the test did not meet the statutory requirements for admission under the "emergency room exception" created in section 11—501.4 of the

Code. Ill. Rev. Stat. 1989, ch. 95¹/₂, par. 11—501.4; 625 ILCS 5/11—501.4 (West 1992).

Section 11—501.4 of the Code provides in pertinent part:

"(a) Notwithstanding any other provision of law, the written results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code *** when each of the following criteria are met:

(1) the blood alcohol tests were ordered by a physician on duty at the hospital emergency room and were performed in the regular course of providing emergency medical treatment in order to assist the physician in diagnosis or treatment;

(2) the blood alcohol tests were performed by the hospital's own laboratory; and

(3) the written results of the blood alcohol tests were received and considered by the physician on duty at the emergency room to assist that physician in diagnosis or treatment." Ill. Rev. Stat. 1989, ch. 95¹/₂, par. 11—501.4(a); 625 ILCS 5/11—501.4(a) (West 1992).

In the present case, the State called Kathleen Shoevlin, an emergency room nurse at Loyola Hospital, to testify. She stated that about 3:50 a.m. on September 10, 1989, she assisted Dr. Carballo in treating Niemiro. She noticed a strong odor of alcohol on Niemiro and described Niemiro as extremely argumentative and uncooperative. She indicated that he hindered his own treatment by pulling an IV out of his arm. In all, Niemiro's actions led her to conclude that he was intoxicated.

Nurse Shoevlin also testified that she drew blood from Niemiro almost immediately upon his arrival at the trauma center at 3:50 a.m. on September 10, 1989. She testified that blood was drawn as part of the routine protocol to assist in the treatment and care of the patient. She labeled the vial of blood and it was sent to the hospital laboratory. Later the results of the blood testing were received in the emergency room on their computer screen and a printout of the screen was provided to the doctor.

Dr. Carballo then testified that he was a physician on duty at the Loyola Hospital emergency room and that he participated in the treatment of Niemiro. He testified that, in the regular course of treatment, he ordered several diagnostic tests to be performed including X rays and blood tests, that the blood tests were performed in the hospital laboratory and that the laboratory entered the results in the hospital computer. A computer located in the hospital emergency room received the information entered by the lab and a

printout of the computer screen was obtained. The laboratory analysis information obtained from the computer was then used by him to assist him in determining a course of treatment for Niemiro.

The State introduced a computer-generated summary report from the Loyola clinical laboratory which contained the results of all the blood testing performed on Niemiro on September 10, 1989, including the blood-alcohol test. This computer printout, which was generated on September 18, 1989, showed that the analysis of Niemiro's blood sample was performed at 4:17 a.m. on September 10, 1989, and at that time he had a .229 blood-alcohol content.[2] Dr. Carballo explained that, although he was made aware of the blood-alcohol content in the emergency room via computer and that a similar printout of the data was provided to him for his reference in the emergency room on September 10, 1989, the particular piece of paper that was printed out on September 10 was discarded. He testified that it was normal procedure to discard the "hard copy" once the data was received because the information was memorialized on the patient's chart and within the computer and a new "hard copy" could be printed out at any time.

After much discussion and argument the trial court ruled, over defendant's objection, that the document was admissible pursuant to section 11—501.4 of the Code. Niemiro now contends that this ruling was error. We disagree and find that the manifest weight of the evidence supports the trial court's determination that the written results of the blood-alcohol tests submitted to the court in this case complied with the statutory mandates of section 11—501.4 of the Code.

We have considered the cases cited by defendant, namely, *People v. Mueller* (1991), 221 Ill. App. 3d 234, 581 N.E.2d 817, and *People v. Reardon* (1991), 212 Ill. App. 3d 44, 570 N.E.2d 791, both Third District Appellate Court cases, which upheld trial court rulings suppressing blood-alcohol test results tendered by the State. According to the very narrow interpretation of section 11—501.4 of the Code in these cases, *written* tests results had to be received and considered by the treating physician in the emergency room and *the same piece of paper* had to be entered into evidence.

In *Reardon* and *Mueller* the evidence presented failed to establish either: (1) that the doctors received a *written* result of the blood-

---

[2] The report actually indicated a .266 blood-alcohol level, but this was for serum as opposed to whole blood. Testimony was provided to show that this figure would translate to a .229 blood-alcohol level for whole blood, which is the standard unit required by statute.

alcohol test, or (2) that the tests results were considered by the doctor in his care and treatment of the patient. In addition, the courts focused on the fact that the written results sought to be admitted by the State were computer printouts generated by the hospital laboratory at a date other than the date in question. The *Reardon* and *Mueller* courts affirmed the suppression of the blood-alcohol tests because the written reports being submitted into evidence were not *the same pieces of paper* seen by the doctors in the emergency rooms at the time that treatment and care were being given. Therefore, the results were held inadmissible pursuant to the statute.

We believe that the trial court in the present case made a well-reasoned judgment, recognizing the reality of today's computer-oriented society and interpreting the statute in that context. We do not find the trial court's interpretation of section 11—501.4, in conjunction with the facts of this case, to be error. The trial court, after conducting its own careful examination of Dr. Carballo, determined that the emergency room doctor ordered various blood tests, including a blood-alcohol test, that the hospital laboratory performed the tests, entered the results in the computer and transmitted the results to the doctor in the emergency room via computer, and that the doctor saw *written* results *on the computer screen* (and in "hard copy") and considered that information in the care and treatment of Niemiro. Although a piece of paper (or "hard copy") containing the data printed on the computer screen was generated on September 10, 1989, that piece of paper was merely a physical manifestation of the computer-held data. At all times, the test results gathered by the hospital laboratory remained permanently memorialized within the computer. Thus, we believe, a computer printout of the data obtained at a later moment in time, and which contained the same data as the computer printout made on September 10, 1989, was admissible.

We note here that Dr. Carballo testified that the data contained in the written report had not been altered in any way and that it was the same data considered by him in the care and treatment of Niemiro. Under these circumstances, we find that the subsequently produced computer printout of the data was properly admitted under section 11—501.4 of the Code. We believe that this interpretation of the statute more closely follows the intent of the legislators in enacting the provision.

Having determined that the written report of Niemiro's blood-alcohol test results was properly admitted, we must find that there was sufficient evidence for the trial court's determination that Niemiro was driving a motor vehicle with a blood-alcohol level greater than .10. Because of this finding, as well as our earlier rulings, we

need not address defendant's final issue challenging the chain of custody with regard to the blood-alcohol tests performed by the Illinois State Police Forensic Sciences Bureau. We merely note that this issue, once again, calls our attention to the sloppy handling of this case.

For all the reasons stated above, we affirm Niemiro's felony conviction for driving while under the influence of alcohol.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.