2025 IL App (1st) 232145-U

No. 1-23-2145

Order filed May 16, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 2861 |
| | ) | |
| OCTAVIUS MORRIS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1　*Held*:　We affirm defendant's convictions for aggravated driving under the influence and driving with a revoked or suspended license over her challenge to the sufficiency of the evidence.

¶ 2　Following a bench trial, defendant Octavius Morris was convicted of aggravated driving under the influence (DUI) and felony driving with a revoked or suspended license and sentenced to concurrent terms of 18 months in prison. On appeal, she argues that the State failed to prove her guilt beyond a reasonable doubt. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      Defendant was charged by information with, *inter alia*, aggravated DUI for allegedly driving or being in actual physical control of a motor vehicle while under the influence of alcohol and while her driving privileges were revoked for a previous violation of the DUI statute (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2022)), and felony driving with a suspended or revoked license for allegedly driving or being in actual physical control of a motor vehicle while her driving privileges were revoked for a previous violation of the DUI or similar statute after having three previous convictions for driving with a revoked or suspended license (*id.* § 6-303(a), (d-3)).

¶ 5      At trial, Calvin White testified that, around 11:30 p.m. on February 25, 2022, he attended a party at his father's home on the 3400 block of West Polk Street. Through a window, he observed a vehicle swerve or veer into the oncoming lane of a two-way street. About 45 seconds to a minute later, White went outside to better see what was happening. He then observed the vehicle stop 40 or 50 feet away in a cul de sac.

¶ 6      White approached the vehicle, which was not running, and observed defendant inside. She was lying across the center console with her legs in the driver's seat and her torso in the passenger's seat. White saw no one exit the vehicle or on the street in the area. White tried to open a door, but the doors were locked. He knocked on the window and defendant did not respond, so he tried to break the window with a rock. The doors "eventually popped open and unlocked." White and others with him were able to "make sure [defendant] was okay but she was angry and got mad at [them]." He stayed on the scene until the police arrived.

¶ 7      White's vehicle was parked in front of his father's home, facing west, and had been sideswiped on its driver's side. The vehicle defendant occupied had been traveling east and was

damaged on its front driver's side. He also observed bumper pieces near the vehicle defendant occupied. White believed that one of defendant's family members moved the vehicle to the curb after the police arrived.

¶ 8      On cross-examination, White agreed that, as he exited the apartment and approached the street, he lost sight of the vehicle. When he approached the vehicle, defendant's "butt" was not in the driver's seat.

¶ 9      Chicago police officer William Bleser testified that, around 11:30 p.m. on February 25, 2022, he and his two partners responded to a call of a traffic crash on Polk. Bleser observed a vehicle with damage to its front end and defendant in the driver's seat. Bleser knocked on the window. Defendant opened the door and declined medical attention. Bleser immediately smelled alcohol on her person. Defendant's speech was slurred and mumbled, her eyes were red and glossy, her pants appeared wet from urine, and she was confused, which, according to Bleser, were signs of intoxication. Bleser believed she was under the influence of alcohol.

¶ 10      Bleser asked defendant if she had been involved in a crash and knew that the vehicle was damaged, which she denied. He asked for her driver's license and insurance, which she could not produce. During their conversation, she "crawled" into the passenger seat and eventually exited the vehicle. Bleser did not ask her to complete any field sobriety tests as she was "extremely unsteady" and needed help standing. She refused a Breathalyzer test.

¶ 11      Bleser was wearing a body camera, and the State published its footage and entered the footage into evidence. The footage is included in the record on appeal and is consistent with Bleser's testimony. It depicts Bleser speaking with a woman sitting in the driver's seat of a sedan parked along the curb. The driver's side-view mirror is visibly damaged. Bleser asks the woman

what happened, and she says, "Nothing." The woman's speech is slurred. She fails to produce any identification. Bleser asks if the vehicle is hers, and she responds that it is not her vehicle and she is "just sitting in the seat." She denies knowing who owns the vehicle. The woman climbs from the driver's seat to the passenger seat by raising her right leg over the center console, putting her foot in the passenger's side, lifting herself over the console and into the passenger's seat, and bringing her left leg over the console and into the passenger's side.

¶ 12    On cross-examination, Bleser agreed that, when he approached the vehicle defendant occupied, it was legally parked along the curb and not running. There was no key fob in the vehicle and defendant did not possess one. Bleser opined that, based on defendant's level of intoxication, her ability to drive was "extremely poor."

¶ 13    On redirect examination, Bleser testified that he believed the vehicle had a "push to start" ignition button. The State asked if, in Bleser's personal experience, it was possible to drive a push-to-start vehicle without a key fob. Defense counsel objected, and the court responded, "First of all, maybe she didn't need the key fob for this car anyway but ask the question." Bleser testified that, based on his personal and professional experience, once a push-to-start vehicle is running, it can be driven without the key fob, but when the vehicle is shut off, it could not be restarted.

¶ 14    Chicago police officer James Berd testified that he responded to the accident. After defendant had climbed over the console into the passenger's seat, Berd approached the passenger's side of the vehicle and spoke with her. She was slurring and incoherent. Berd smelled alcohol and asked her to exit the vehicle. Defendant began to step out, then said "no" and reentered the vehicle, and then exited. She stumbled and lost her balance. Berd believed defendant was "[e]xtreme[ly]"

impaired as she could not walk by herself, was incoherent, had urinated on herself, and could not follow directions. No key fob was recovered from a search of defendant.

¶ 15    Berd was wearing a body camera, and the State published its footage and entered the footage into evidence. The footage is included in the record on appeal and is consistent with Berd's testimony. The video additionally shows that while Berd stands near the passenger's side of the vehicle, a man approaches the driver's side of the vehicle and says, "Fiancée." Berd asks if he can help the man, who states that he is "checking on [his] fiancée." Berd asks him to stand by the trunk of the vehicle, and the man says, "Let me talk to her." The man moves near a group of people standing behind the vehicle. Berd then opens the passenger's door, and a woman whom Berd identified in court as defendant is visible in the passenger's seat. The officers ask her to exit the vehicle. She initially refuses. She briefly stands, then reenters the passenger's seat, steps out of the vehicle again, loses her balance, and reenters the passenger's seat. She then exits the vehicle and walks to the rear of the vehicle with an officer holding her arm.

¶ 16    Chicago police officer Vanessa De Leon testified that, at the police station, she was asked to read defendant a "Warning to Motorist." De Leon approached defendant, who was in a cell and "naked essentially," with her clothes down to her legs and her shirt off her shoulders. A puddle underneath defendant smelled of urine. De Leon also smelled alcohol. Defendant was snoring, nodding, not paying attention, and responding "incoherently" with slurred speech. She could not stand on her own. De Leon believed defendant was "severe[ly]" impaired.

¶ 17    The State entered into evidence a certified abstract of defendant's driving record without objection. The exhibit is included in the record on appeal and indicates that defendant's driver's

license was revoked in 2008 following a conviction for DUI, and states that the revocation was in effect on February 25, 2022.[1] The State rested.

¶ 18    Defense counsel moved for a finding of not guilty, arguing, *inter alia*, that defendant could not have started the vehicle without its key fob. The court responded that "[w]e knew it started because it was driven." The court denied the motion. The defense rested without presenting evidence.

¶ 19    During closing arguments, defense counsel argued that someone else with the vehicle's key fob had driven the vehicle, exited, and left defendant inside, and defendant was too intoxicated to have parked the vehicle along the curb. The State argued in response that the vehicle could have been started by a person with a key fob, but defendant could have driven it.

¶ 20    Following argument, the court found defendant guilty of aggravated DUI and driving with a suspended or revoked license. The court stated that, regarding defendant's lack of a key fob, "[w]e know the car was driven to that scene" as White saw it pass his father's home. Then, White approached the vehicle and saw defendant "leaning over from the driver's side with her rear end on the driver's seat towards the passenger side." Defense counsel stated that was incorrect, and the court responded, "If you don't like what I'm saying don't listen then but don't interrupt, please." The court found no evidence that someone else had been driving, exited the vehicle, and left defendant in the locked vehicle, and concluded circumstantial evidence proved that defendant drove the vehicle.

---

[1] The copy of the certified abstract contained in the record on appeal clearly shows two prior convictions under section 6-303 of the Illinois Vehicle Code (625 ILCS 5/6-303 (West 2022)). It does not clearly indicate a third prior conviction under that section. While delivering its findings, the court asked the State whether defendant had three prior convictions under section 6-303. The State responded affirmatively and the defense did not object.

¶ 21    The court denied defendant's motion for new trial and in arrest of judgment. Following a hearing, the court sentenced defendant to concurrent terms of 18 months in prison. The court denied her motion to reduce the sentence.

¶ 22                                    ANALYSIS

¶ 23    On appeal, defendant claims the State failed to prove her guilt beyond a reasonable doubt because the evidence was insufficient to show that she drove or was in actual physical control of a vehicle.

¶ 24    "When reviewing a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Harvey*, 2024 IL 129357, ¶ 19. We must view the evidence in the light most favorable to the State and allow all reasonable inferences in the State's favor. *Id.* It is the factfinder's responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences, and we will not substitute our judgment for that of the factfinder's on questions involving the weight of the evidence or the witnesses' credibility. *People v. Galarza*, 2023 IL 127678, ¶¶ 25-26. We will only reverse a conviction if the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *Id.* ¶ 26.

¶ 25    A conviction may be sustained on circumstantial evidence alone if the circumstantial evidence proves the offense's elements beyond a reasonable doubt. *Id.* ¶ 27. "Circumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts that reasonably and usually follow according to common experience." *People v. McAndrew*, 2024 IL App (1st) 230881, ¶ 45. The factfinder "need not, however, be satisfied beyond a

reasonable doubt as to each link in the chain of circumstances," if all the evidence, taken together, proves the defendant's guilt. (Internal quotation marks omitted.) *Galarza*, 2023 IL 127678, ¶ 27. Nor must the factfinder disregard inferences flowing normally from the evidence and raise "all possible explanations consistent with innocence" to the level of reasonable doubt. (Internal quotation marks omitted.) *Id.* ¶ 25.

¶ 26    Defendant was convicted of aggravated DUI and felony driving with a revoked license. Section 11-501(a)(2), (d)(1)(G) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2022)) provides that a person commits aggravated DUI if she "drive[s] or [is] in actual physical control of any vehicle" while under the influence of alcohol and her driving privileges were revoked or suspended for a prior violation of section 11-501(a). Relevant here, section 6-303(a) of the Code provides that a person commits the offense of driving with a suspended or revoked license when she "drives or is in actual physical control of a motor vehicle" while her driver's license or privilege to obtain a driver's license is revoked or suspended. *Id.* § 6-303(a).

¶ 27    Defendant does not dispute that she was under the influence of alcohol or had a revoked or suspended driver's license. Her only argument is that, for both offenses, the State failed to prove that she drove or was in actual physical control of a vehicle. Viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could find the evidence sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 28    White testified that, through a window, he observed a vehicle swerve or veer into the oncoming lane of a two-way street. He went outside, which took 45 seconds to a minute, and observed the vehicle stop 40 or 50 feet away. White approached the vehicle and saw defendant

inside, lying across the center console with her legs in the driver's seat and her torso in the passenger's seat. He saw no one exit the vehicle or on the street and noted the doors were locked. White's vehicle, which had been parked on the street facing west, was damaged on its driver's side, and the vehicle defendant occupied, which had been traveling east, was also damaged on its driver's side.

¶ 29    White's testimony that he saw the vehicle being driven, went outside and saw it stop, approached it, and discovered defendant inside, alone, with the doors locked, is sufficient evidence for a rational trier of fact to reasonably conclude that defendant drove the vehicle. Although White did not see defendant drive the vehicle, "[i]t is well established that observation of a defendant in the act of driving is not an indispensable prerequisite for a conviction," and "[t]he driving element may be proved by circumstantial evidence alone." *People v. Lurz*, 379 Ill. App. 3d 958, 969 (2008); see *McAndrew*, 2024 IL App (1st) 230881, ¶ 45 (noting that circumstantial evidence may prove the elements of DUI). The circumstantial evidence here creates the reasonable inference that defendant drove the vehicle when White observed it through the window and saw it stop in the cul de sac. See *People v. Toler*, 32 Ill. App. 3d 793, 795, 800 (1975) (circumstantial evidence of driving sufficient where a witness saw the vehicle being driven less than two minutes before approaching the vehicle and finding the defendant in the back seat, and only the defendant was found in or near the vehicle).

¶ 30    Nonetheless, defendant argues there were "critical gaps" in the State's evidence that she drove the vehicle. Specifically, she notes that White did not testify that he saw her driving the vehicle or moving inside the vehicle. Defendant also raises timing issues with White's testimony, contending that, within the 45 seconds to a minute after White first viewed the moving vehicle,

she could not have moved from the driver's seat to the position where White observed her and then fallen asleep or passed out. She also contends that her position in the vehicle as described by White was inconsistent with how she moved from the driver's seat to the passenger seat as captured by Officer Bleser's body-worn camera.

¶ 31    Along those same lines, defendant notes that the officers' body-worn camera footage depicts a man claiming to be her fiancé. Defendant posits that she may have been lying on the passenger's seat with her feet in the driver's seat while her fiancé or someone else drove the vehicle, and during the period when White could not see the vehicle, the driver turned the vehicle off, exited, left defendant inside, locked the doors, and left the area. She further notes that she did not admit to driving, she was not in possession of the vehicle's key or key fob, and no evidence was presented as to who owned the vehicle.

¶ 32    Defendant's theory that someone else drove the vehicle is an explanation consistent with innocence that need not be raised to the level of reasonable doubt. *Galarza*, 2023 IL 127678, ¶ 25. We must allow all reasonable inferences in favor of the State (*Harvey*, 2024 IL 129357, ¶ 19), and, under these circumstances, it is a reasonable inference that defendant drove the vehicle. Further, we reject defendant's argument that a factfinder could infer "with equal if not more certainty" that someone else drove the vehicle. First, this argument is a request that we substitute our judgment for the factfinder's regarding the weight of the evidence, which we will not do. *Galarza*, 2023 IL 127678, ¶ 26. Second, it is not equally plausible that another person drove the vehicle where defendant was discovered alone in the locked vehicle just moments after it was driven, and no one was seen on the street.

¶ 33    Defendant further contends that Bleser did not provide a basis for his testimony that the vehicle had a push-to-start engine and that push-to-start vehicles, once started, could be driven without the key fob. She therefore argues that, as she did not possess the key or key fob, the court's finding that she drove the vehicle required "impermissible speculation" that the vehicle could be operated without the key or key fob and that "she was at some point with somebody else who had the fob and then drove away without them."

¶ 34    While defendant was not found in possession of the vehicle's key or key fob, starting the vehicle is not an essential element of the offenses at issue. Both statutes under which defendant was convicted prohibit, under certain circumstances, driving or being in actual physical control of a vehicle. See 625 ILCS 5/6-303(a), 11-501(a)(2) (West 2022). When considering whether a defendant had actual physical control of a vehicle, possessing the ignition key is one factor to be considered (see *McAndrew*, 2024 IL App (1st) 230881, ¶ 46), but the State was not required to prove that defendant started the vehicle to prove that she drove it. Rather, how the vehicle was started is a link in the chain of circumstances that the State need not prove beyond a reasonable doubt where the totality of the evidence proved that defendant drove the vehicle. See *Galarza*, 2023 IL 127678, ¶ 27 (not every link in the chain of circumstantial evidence needs to be proven beyond a reasonable doubt); *People v. Niemiro*, 256 Ill. App. 3d 904, 909-10 (1993) (where it was "obvious" that someone was driving, the issue was whether evidence sufficed to prove the defendant was the driver). As discussed, a rational factfinder could conclude from the circumstantial evidence here that defendant was the driver.

¶ 35    Defendant also notes that the trial court, when finding her guilty, stated that she was found "leaning over from the driver's side with her rear end on the driver's seat towards the passenger

side." In contrast, she notes White testified that her "butt" was not in the driver's seat. Defendant argues that the court's misstatement of the evidence was "an abuse of discretion that denied [defendant] her right to due process." In response to the State's argument that defendant forfeited this contention by failing to raise it in a posttrial motion, defendant asserts that she raised it not "as a separate claim on appeal," but as a factor contributing to the trial court's "irrational" decision to find her guilty.

¶ 36    In any event, we find the court's minor misstatement of the evidence did not affect its ruling. See *People v. Williams*, 2017 IL App (1st) 150795, ¶ 39 (trial court's minor misstatement of evidence does not violate due process if it did not affect the basis of the ruling). The court emphasized that the vehicle was seen being driven before defendant was discovered inside it and rejected the inference that someone else had been driving. The court's finding that defendant had driven the vehicle was not based on defendant's exact position within the vehicle, but her presence in it, alone, with the doors locked, moments after it was seen being driven. Further, the court was generally correct that defendant's upper body was in the passenger's seat and lower body was in the driver's seat.

¶ 37    The State's evidence was sufficient to prove defendant's guilt of aggravated DUI and driving with a suspended or revoked license beyond a reasonable doubt. Defendant's arguments to the contrary are a request that we substitute our judgment for that of the trial court on issues involving the weight of the evidence, which we may not do. *Galarza*, 2023 IL 127678, ¶¶ 25-26. We therefore affirm her convictions.

¶ 38                                CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40   Affirmed.